[No. 25522. Department Two. June 28, 1935.]

THE STATE OF WASHINGTON, *Respondent*, v. BENJAMIN S. PASCHALL, *Appellant*.[1]

*Henry Clay Agnew*, for appellant.

*Warren G. Magnuson (John F. Walthew*, of counsel), for respondent.

BLAKE, J.—The defendant is a physician. A patient upon whom he performed an abortion died as a result of the operation. He was charged with manslaughter, of which crime a jury found him guilty. He appeals from judgment and sentence on the verdict.

[1]Reported in 47 P. (2d) 15.

■ Appellant did not take the witness stand. The state produced several witnesses who testified as to statements made by appellant upon his being taken into custody shortly after the death of his patient. Among the statements attributed to him by these witnesses was one to the effect that he had called Doctor Templeton and Doctor Ristine into consultation before performing the operation. Neither Doctor Templeton nor Doctor Ristine was called as a witness by defendant, but another doctor was, who testified that appellant had consulted him by telephone before operating. The state offered evidence in rebuttal to the effect that appellant had said he had called no other physicians than Doctor Templeton and Doctor Ristine.

The statement of facts shows the following to have occurred during the closing argument of the deputy prosecuting attorney:

"MR. WALTHEW: Now, I can't conceive that the court reporter, Mr. MacDonald, Mr. — the two police officers Warner and Winter, — that they were all lying about what the defendant said. There has been no word of denial by anybody that he did say that. Where is the witness that got on the stand to say that Paschall didn't say that he only called in one? No man under oath. A reporter before this bar and other bars twenty years went on his oath. I said: 'Didn't Paschall state in my presence,' — and he took it down, — 'I didn't call any witness in but Templeton?' Where is the witness? Where is the man's lips that said it is not so?"

(The above argument was made by the deputy prosecuting attorney while facing the defendant, with his outstretched hand in the direction of the defendant.)

"MR. VANDERCOOK: I except to that as improper argument, if the court please."

"Where is the man that says that Winter, MacDonald, Warner, Ira Holcomb were lying when they said that? Not a word, not a word. It stands admitted because it is not contradicted; because nobody saw fit to say it is not true. If Paschall didn't say it, they are lying. So it stands admitted."

(During the remainder of the closing argument the deputy prosecutor, while discussing other points not related to the above subject matter, on several occasions turned and facing the defendant gestured towards him.)

Appellant, being the only person who could have denied the facts alluded to, contends that this argument and conduct violated his rights under § 9, Article I, of the constitution, which provides:

"No person shall be compelled in any criminal case to give evidence against himself, . . ."

This court has consistently held that this provision precludes any direct reference to the fact that a defendant has failed to take the witness stand. *State v. Smokalem*, 37 Wash. 91, 79 Pac. 603; *State v. Pavelich*, 150 Wash. 411, 273 Pac. 182. Respondent, however, seeks to justify the argument and conduct of the deputy prosecutor by the decision of this court in *State v. Litzenberger*, 140 Wash. 308, 248 Pac. 799, where we said:

"The deputy prosecuting attorney, in his opening argument to the jury, and the prosecutor himself in the closing argument, iterated and reiterated the statement that certain testimony on behalf of the state was undenied. It is apparently conceded that no one except appellant could have denied the particular facts alluded to, and he not having offered himself as a witness, it is contended that this amounted to a comment on his failure to testify. But we think to follow appellant would be to carry the rule too far. Surely the prosecutor may comment upon the fact that certain testimony is undenied, without reference to who may or may not be in a position to deny it; and, if that results in an inference unfavorable to the accused, he must accept the burden, because the choice to testify or not was wholly his."

The deputy prosecutor, on the hearing of the motion for new trial, stated to the trial court that it was his

intention to go as far as he could under the holding in the *Litzenberger* case. But he went farther, as is shown by the record. We can see no difference in pointing at the appellant, under such circumstances, and in mentioning his name. The gesture may be as eloquent as the spoken word—and as effective. It was as direct and positive a reference to appellant's failure to testify as if his name had been spoken. We cannot uphold the deputy prosecutor's conduct without going a step beyond the doctrine announced in the *Litzenberger* case. This, under the authorities, we are not warranted in doing. See: *State v. Pavelich, supra; Morrison v. United States,* 6 Fed. (2d) 809; *People v. Donahoe,* 279 Ill. 411, 117 N. E. 105; *Miller v. Commonwealth,* 182 Ky. 438, 206 S. W. 630.

Evidence of declarations made by the deceased concerning her condition and attempts to alleviate it was offered by the state and admitted. These statements and declarations were made under the rule stated in *State v. Power,* 24 Wash. 34, 63 Pac. 1112, 63 L. R. A. 902, as follows:

"It was certainly competent for the state to prove that the defendant left her home to go to Spokane, and that she there sought the defendant and placed herself under his treatment. The preparation she made for going, her condition of health at that time, and her conduct and demeanor, were likewise matters properly admissible in evidence, as a part of the history of the case and necessary to its general understanding. On the same principle, her declarations made at the time she was preparing for the journey could be shown. They were in the nature of verbal acts, explanatory of what she was doing and of her object and purpose, and are part of the *res gestae* of this particular part of the entire transaction."

On cross-examination of a witness who testified to some such declarations by deceased, he was asked if deceased had not told him that she had gone to a mid-

wife, who inserted an instrument which caused much pain. The question was answered in the affirmative, but upon motion of the state the answer was stricken and the jury told to disregard it. It appeared from the testimony of state's witnesses that, when taken into custody and questioned, appellant took the position that the operation was necessary to save the patient's life; that the foetus was dead, and that the umbilical cord was protruding from the uterus; that the patient told him that she had been to a midwife, who had inserted an instrument in the uterus. In view of this position of appellant and the scope of the direct examination of the witness with respect to statements and declarations made by deceased, the answer to the question should have been allowed to stand.

There are other assignments of error, only one of which, however, we think of sufficient merit to call for notice. Stenographic notes were taken of the examination of appellant at the time he was taken into custody. A witness, who was present at that examination, testified that, before coming into court, he refreshed his memory by reading from a transcription made from the stenographic notes. Counsel for appellant demanded the transcript for use in cross-examination of the witness. The transcript was not in the possession of the witness. It was, however, in the court room in possession of the deputy prosecutor, who refused to accede to the demand. The court declined to compel him. This was not error. The applicable rule is stated in 5 Jones Commentaries on Evidence (2d ed.), § 2387, as follows:

"There is, moreover, a clear distinction between memoranda which have been used to refresh the memory before the witness comes into court, and those which are used or sought to be used by the witness when in court and on the stand. Memoranda used out-

side of court need not be brought into court, since the witness in theory finally testifies from his own recollection. All the authorities unite in permitting the use outside of court of memoranda, and it is immaterial of what nature the memorandum is, whether an original writing or a copy, whether made by the witness himself or by someone else, whether written or printed, or whether made at the time of the occurrence to which it relates or at a later day. In such cases the writing need not be given to the opposite side for the purpose of allowing them to cross-examine from it. It is not the memorandum which speaks, but the recollection of the witness. If it develops, however, on cross-examination of the witness or otherwise, that, outside of court, he has resorted to some memorandum to refresh his memory, the failure to produce such memorandum may go to the credibility of the witness.''

The judgment is reversed, and the cause remanded with directions to grant a new trial.

MITCHELL, HOLCOMB, and STEINERT, JJ., concur.

MILLARD, C. J., dissents.