[No. 27461. Department Two. July 10, 1939.]

THE STATE OF WASHINGTON, *Respondent*, v. ROY WRIGHT, *Appellant*.

*Eugene D. Ivy*, for appellant.

*Lloyd L. Wiehl*, for respondent.

SIMPSON, J.—The information in this case charges the defendant with the crime of murder in the first de-

gree, committed while he was unlawfully and feloniously engaged in the crime of robbing John Dee Moore.

The defendant entered a plea of guilty. Trial by jury resulted in a verdict that the death penalty be inflicted. The court then sentenced the defendant in accordance with the verdict of the jury.

In appellant's brief, two assignments of error are made, namely, that the court erred (1) in refusing to grant defendant's motion for a continuance of the date for trial; and (2) in holding that there was no appeal to prejudice and passion in the prosecutor's closing argument in which he said defendant would not be required to serve a life sentence, if imposed, because life did not mean life but only about eight years. During his oral argument in this court, counsel for appellant withdrew the first assignment of error.

The facts disclosed by the evidence, which included appellant's confession and admission of guilt while on the witness stand, may be briefly stated as follows: Appellant was born July 12, 1920. Since the year 1932, he has spent much of his time in detention homes and reform schools in the state of California. During the month of June, 1938, he escaped from the Preston School of Industry at Ione, California, and went to Portland, Oregon, at which place he committed several acts of robbery. Thereafter, he journeyed to Yakima, Washington, in a car he stole in Portland. After his arrival at Yakima, appellant robbed two women near Wapato and another in the vicinity of Toppenish, using a revolver in the commission of those crimes.

November 7, 1938, appellant went to the Packard agency in Yakima and asked to be shown a car. The owner of the agency, John Dee Moore, took him for a ride in a 1937 Packard coupe for the purpose of a demonstration. Appellant told Mr. Moore that his mother

lived on Route 1, in Wapato. Appellant was driven around the city of Yakima for a short time and then, upon appellant's statement that his mother would make a payment on the car, they drove toward Wapato.

After driving a considerable distance, Mr. Moore became suspicious and asked appellant why he had been directed along a certain road. Appellant then stated that his folks lived in a house on a side road to the left of the one upon which they were traveling, and asked Mr. Moore for permission to drive the car, which was refused. Appellant then pulled a revolver from his outside overcoat pocket and told Mr. Moore to get out of the car and surrender his wallet. Mr. Moore with his left hand pulled the keys out of the ignition and with his right hand grabbed for the gun. Appellant then shot Mr. Moore, the bullet entering his right temple, killing him instantly.

Appellant drove the car through Toppenish onto the road leading to Goldendale, stopping twice in an endeavor to pull Mr. Moore's feet from where they had lodged close to the transmission gear shift. During one of these stops, appellant took from the body four dollars in currency, a billfold, watch, knife, and tie clasp. At a place about twenty-six miles from Toppenish, appellant turned off the main highway, stopped the car close to the edge of a gulch, pulled the body from the car and over the side of the gulch, so that it lodged at a point five or six feet from the top of the bank. After wiping blood from the car and his hands, appellant drove to Vancouver, Washington, where he left the automobile.

During the next few days, he traveled by various means to San Jose, California. At that place, appellant was able to get a salesman to let him drive a demonstration car, and immediately drove away. Within a

short time, he was apprehended, and when charged with the crime of killing John Dee Moore, readily confessed to the Yakima peace officers.

In his closing argument to the jury, the prosecuting attorney included in his address the following statements:

"The very fact that the average stay in a penal institution for lifers is less than eight years the country over is proof of that fact. The very fact that some sentimental governor may get in the governor's chair and through sentimentality pardon some lifers on Christmas day is proof of that fact. You know if this boy goes to Walla Walla he will probably be out in perhaps ten years, and not more than twenty years. He will get out of there to prey again upon society. Do you think with his background that being placed in the penitentiary at Walla Walla will reform him? Do you think being among those hardened criminals, murderers, robbers, those mad dogs that have been penned up there, is going to reform this boy? Do you think his attitude on life is going to be changed when he gets out of there? He will be worse than ever. . . . The mere fact that he is here asking for your sympathy and trying to get off with a life sentence, with a mere change of abode for a few years at your expense, proves that. If you turn this boy loose, as you must if you give him a life penalty, what is going to be the attitude of the rest of those people who commit crime, those other six to this one? What is going to be their attitude?"

Counsel for appellant did not except to the argument, nor did he present a motion asking that the court instruct the jury to disregard the statements made by the prosecuting attorney. Under such circumstances, the statements did not amount to misconduct unless they were so flagrant that an instruction could not cure the alleged inflammatory effect thereby created. *State v. Regan,* 8 Wash. 506, 36 Pac. 472; *State v. Bailey,* 31 Wash. 89, 71 Pac. 715; *State v. Meyer-*

*kamp,* 82 Wash. 607, 144 Pac. 942; *State v. Stratton,* 170 Wash. 666, 17 P. (2d) 621.

Appellant contends that the prosecuting attorney was guilty of misconduct in making the foregoing statements, in that the argument aroused passion and prejudice in the minds of the jury, which resulted in the denial of a fair and impartial trial.

This question has been before this court on several occasions, and each time we have held that statements similar to those used by the prosecuting attorney in the case at bar did not constitute misconduct which would require a reversal of the case on appeal.

The defendant in *State v. Stratton, supra,* had been convicted of murder in the first degree, and a death sentence had been imposed in accordance with a special verdict of the jury. In that case, the prosecuting attorney's address to the jury contained the following:

"If you find this man guilty as charged and then he should be sentenced to life imprisonment in the state penitentiary have you performed your sworn duty,— the average term of years that a lifer spends in the penitentiary does not exceed eight years, and after this defendant has been in there for a few years he can appear before a sympathetic parole board and turned out to again do the same act that he did here in this county. Bear in mind, ladies and gentlemen of the jury, that this man is now an assassin, he has tasted blood, and he finds it sweet. He is now twenty-two years of age, ten years in the penitentiary and he comes out at thirty-two able to pursue the same ruthless career that he pursued here. It is hard for me to ask this, and it may be hard for you to do, but when you equalize all of the facts here when you retire to deliberate upon your verdict in this case, I cannot help but feel that you have only one alternative, and that is to give the life of this defendant to the state of Washington; not in any spirit of revenge, not in any spirit of vengeance, but that you and I and your friends may be able to walk and know that there is a law flooded around you that

will protect you and me from such acts as this, and your verdict act as a deterrent to young men who are actuated to do similar crimes to this one, for the sole and only purpose of securing money."

This court held that the argument did not amount to such misconduct as would require a reversal.

The rule announced in the case just cited has been followed by this court in the following cases: *State v. Bradley,* 175 Wash. 481, 27 P. (2d) 737; *State v. Lynch,* 176 Wash. 349, 29 P. (2d) 393; *State v. Knapp,* 194 Wash. 286, 77 P. (2d) 985; *State v. Buttry, ante* p. 228, 90 P. (2d) 1026.

The attorney for appellant, while admitting the force and effect of our prior rulings, earnestly contends that the argument made in this case unduly influenced the jury, and that we should now change the rule announced in the cases just cited.

This contention has been fully considered in the cases cited above, and we feel the rule laid down therein is a proper one, and that we should not now depart from it.

Our examination of the record discloses that appellant was accorded a fair and impartial trial. He was ably defended, and the verdict of the jury was, under the evidence, entirely justified.

The judgment and sentence are affirmed.

BLAKE, C. J., MAIN, MILLARD, and GERAGHTY, JJ., concur.