[No. 33316.   *En Banc.*   June 7, 1956.]

THE STATE OF WASHINGTON, *Respondent*, v. EARL C. CASE, *Appellant.*[1]

[1]Reported in 298 P. (2d) 500.

*Warner, Pierce & Peden,* for appellant.

*Charles O. Carroll, Laurence D. Regal,* and *Virginia S. Mueller,* for respondent.

HILL, J.—This appeal is based primarily upon misconduct of a deputy prosecuting attorney in the trial of the case.

There is a canon of ethics (No. 15) which states, in part:

"It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause." 34A Wn. (2d) 131.

It should be implicit that it is just as reprehensible for one appearing as a public prosecutor to assert in argument his personal belief in the accused's guilt.

The appeal is from a conviction of carnal knowledge. The prosecuting witness, the daughter of the defendant, was eighteen years of age at the time of trial.

In his closing argument, the deputy prosecuting attorney made the following statement, not as a summation of the evidence but immediately following a plea (which takes up almost a page of the statement of facts) to the women jurors to overcome any embarrassment and to be frank in. their discussion in the jury room:

"I doubt in my mind that anyone at this point has any question in their mind about the guilt or innocence of this man. I doubt that you haven't already made up your mind. Now, you must have, as human beings. But if you haven't, don't hold it against me. I mean, that is my opinion about what this evidence shows and how clearly this evidence indicates that this girl has been violated. *This girl has been sexually attacked* by a person; by a man, *by her father.* It is called statutory rape. Carnal knowledge is just a nice name for statutory rape. *This girl has been raped by her own father.* It is not a nice thing." (Italics ours.)

If presented as a summation of the evidence, such language, prefaced with at least an implied "The evidence establishes that," would be excused if not approved. *State v. Brown* (1949), 35 Wn. (2d) 379, 213 P. (2d) 305, and cases therein cited. But that is not the situation here. We cannot interpret the quoted statement, taken in context, as anything other than an attempt to impress upon the jury the deputy prosecuting attorney's personal belief in the defendant's guilt. As such, it was not only unethical but extremely prejudicial.

Defense counsel made no objection to this statement.

In an earlier phase of the argument the deputy prosecuting attorney had explained that the prosecuting witness was staying with a couple who were members of Jehovah's Witnesses, and stated that she was there

". . . *because I requested it.* It is my doing. So if you are going to condemn anybody, condemn me. I didn't do it because I am a Jehovah's Witness. I didn't do it because I want this girl to follow their religion. *I did it because in my*

*good judgment these people were going to protect Joyce against this man*" (Italics ours);

and defense counsel had interrupted: "I object, your honor, to counsel interjecting his own personal opinions into this argument. It is not in the record." However, that objection was, in effect, overruled, the trial court's only comment being: "Proceed."

The deputy prosecuting attorney adroitly capitalized upon the trial court's error in failing to sustain the objection by saying:

"Thank you, your honor. It is a common experience in trial work to have some attorney jump up and object in the middle of the argument. It kind of throws you off but I am kind of used to it. I've got calluses. I've had them do it before."

Out of his own experience, the deputy prosecuting attorney advised the jury that "it is not uncommon in cases of this kind for a complaint to be greatly belated in father-daughter relationships." He then delivered the following dissertation on sex deviation, which has no support in the record and is entirely extraneous:

"Is it uncommon for a person charged with a sex crime to be a pillar of society? You can't characterise [sic] or pigeonhole this sort of crime in any segment of society. You can have the top man, the top man of the nation, even. It hasn't happened, I am sure, but it could be. We have had men in the State Department that have been accused of things of that nature. In my own experience it has occurred in the Seattle School District, principals of schools have been accused, charged and convicted of sex deviations. It knows no difference. It is like a disease. It is like polio, it hits all over, it doesn't pay any attention to who the person is, whether you had measles as a child, whether you had rickets or something. It is something in the brain and mind and goes all over the area."

Defense counsel interposed:

"I object, your honor, to counsel making a speech about matters which are not before this court. He is going into the question of psychiatric—."

The trial court admonished: "You will discuss the testimony and evidence." The deputy prosecuting attorney rejoined:

"I was arguing the testimony and evidence and if I am going to be curtailed to just the testimony precisely, without any right to argue, I will limit it to that";

but he did not do so. Within a minute or two he was discussing the war record of Jehovah's Witnesses as litter-bearers.

A further recital of instances in which the deputy prosecuting attorney went outside of the record in his closing argument, and expressed his own opinions, sometimes unlabeled and at least once labeled as his "honest opinion," would serve no good purpose. During the course of the trial, he had referred to the defendant's character witnesses, who had not yet taken the stand, as "his entire herd." An objection, an instruction to disregard, and an apology probably could not erase from the minds of the jurors the brand thus forcefully applied, particularly when the deputy prosecuting attorney nullified his apology by the comment, "Crowd, I mean to say." Such an incident, if not in itself warranting a new trial, would certainly increase the adverse effect of the misconduct in the closing argument.

■ We have always insisted that the guarantee of a speedy and public trial by an impartial jury (constitution, Art. I, § 22, both before and after its change by the tenth amendment) means a fair trial. As Judge Mitchell put it in *State v. Devlin* (1927), 145 Wash. 44, 52, 258 Pac. 826:

"In the maintenance of government to the extent it is committed to the courts and lawyers in the administration of the criminal law, it is just as essential that one accused of crime shall have a fair trial as it is that he be tried at all."

■ The responsibility of the prosecutor in the matter of a fair trial is referred to in *People v. Fielding* (1899), 158 N. Y. 542, 547, 53 N. E. 497, 46 L. R. A. 641, in these words:

"Language which might be permitted to counsel in summing up a civil action cannot with propriety be used by a public prosecutor, who is a *quasi*-judicial officer, representing the People of the state, and presumed to act impartially in the interest only of justice. If he lays aside the impar-

tiality that should characterize his official action to become a heated partisan, and by vituperation of the prisoner and appeals to prejudice seeks to procure a conviction at all hazards, he ceases to properly represent the public interest, which demands no victim, and asks no conviction through the aid of passion, sympathy or resentment."

And in the dissent in that case, it is said:

"The district attorney is a high public officer, representing the state, which seeks equal and impartial justice, and it is as much his duty to see that no innocent man suffers as it is to see that no guilty man escapes. In the discharge of these most important duties he commands the respect of the people of the county and usually exercises a great influence upon jurors. In discussing the evidence he is . . . given the widest latitude within the four corners of the evidence by way of comment, denunciation or appeal, but he has no right to call to the attention of the jury matters or considerations which the jurors have no right to consider."

The case of *State v. Carr* (1930), 160 Wash. 83, 294 Pac. 1016, contains an excellent discussion of what constitutes a fair trial. It will not be repeated here, inasmuch as it has very recently been quoted at some length in *State v. Reeder* (1955), 46 Wn. (2d) 888, 892, 285 P. (2d) 884.

█ "Fair trial" certainly implies a trial in which the attorney representing the state does not throw the prestige of his public office, information from its records, and the expression of his own belief of guilt into the scales against the accused. See *State v. Susan* (1929), 152 Wash. 365, 278 Pac. 149.

█ While the state's opening argument to the jury in the present case was not above criticism, the closing argument destroyed any semblance of a fair trial.

The state quite properly reminds us that we are an appellate court and cannot remand a case for a new trial merely because we are convinced, from the record, that the defendant did not have a fair trial. It is urged that the defendant did not make the proper objections at the proper times, nor did he follow through with the proper motions to strike from the record and to instruct the jury to disregard what

had been said or done; and that, consequently, he has waived the right to urge the improper and prejudicial argument as error in this court.

We recognize that, as Judge Steinert said in *State v. Perry* (1946), 24 Wn. (2d) 764, 769, 167 P. (2d) 173:

"One may not elect voluntarily to submit his case to a jury satisfactory to him, and then, after an adverse verdict, for the first time on appeal claim error which, if it did exist, could have been cured or otherwise redressed by some action on the part of the trial court."

We have repeatedly stated that misconduct in the form of improper argument cannot be urged as error unless the aggrieved party had requested the trial court to correct it by instructing the jury to disregard it, and had taken exception to the court's refusal to do so. *State v. Taylor* (1955), 47 Wn. (2d) 213, 287 P. (2d) 298; *State v. Lane* (1950), 37 Wn. (2d) 145, 222 P. (2d) 394; *State v. Perry, supra*; *State v. McWhinney* (1945), 23 Wn. (2d) 334, 161 P. (2d) 162; *State v. Wright* (1939), 199 Wash. 521, 92 P. (2d) 247; *State v. Melson* (1936), 186 Wash. 8, 56 P. (2d) 710; *State v. Stratton* (1932), 170 Wash. 666, 17 P. (2d) 621; *State v. Johnson* (1918), 103 Wash. 59, 173 Pac. 723; *State v. Meyerkamp* (1914), 82 Wash. 607, 144 Pac. 942.

There is, however, an exception to that rule in cases where the misconduct has been so flagrant that no instruction could cure it. *State v. Reeder, supra*; *State v. Lane, supra*; *State v. Perry, supra*; *State v. Wright, supra*; *State v. Melson, supra*; *State v. Stratton, supra*; *State v. Heaton* (1928), 149 Wash. 452, 271 Pac. 89; *State v. Meyerkamp, supra*. We think that *State v. Navone* (1936), 186 Wash. 532, 58 P. (2d) 1208, should be included in this group, although the exception is not so explicitly stated therein as in the other cases.

In three of the cases in which the exception has been recognized, we have held that the misconduct was so flagrant that an instruction to disregard the statements made by the prosecutor could not have cured the error. *State v. Reeder, supra*; *State v. Navone, supra*; *State v. Heaton, supra*. We do not mean to imply that we have not reversed

other convictions because of misconduct of the prosecutor in argument, but in these latter cases there was no question of a waiver of error by failure to preserve the record. See *State v. Swan* (1946), 25 Wn. (2d) 319, 171 P. (2d) 222; *State v. Paschall* (1935), 182 Wash. 304, 47 P. (2d) 15; *State v. Carr* (1930), 160 Wash. 74, 294 Pac. 1013; *State v. Pavelich*, (1928) 150 Wash. 411, 273 Pac. 182, (1929) 153 Wash. 701, 279 Pac. 1107.

We have directed attention in this record to one objection that was timely made and erroneously overruled by the direction, "Proceed"; and to another to which the trial court's response was an admonition to "discuss the testimony and the evidence," which the deputy prosecuting attorney openly and audibly criticized and quickly ignored. We will assume that other objections and motions should have been made on behalf of the defendant, even at the risk of a series of unseemly wrangles.

The test as to whether the failure to adequately preserve the record is excused, is whether the misconduct was so flagrant that no instruction could cure it. *State v. Meyerkamp, supra,* and subsequent cases heretofore cited. In this type of case, the pat answer of the prosecutor to the claim that anything he has said is so flagrant that an instruction could not cure it, lies in the citation of a case in which we have held that something which seems even more prejudicial, at least when taken out of the background of the case in which it appears, could have been cured by an adequate instruction. (The danger of such comparisons is made clear in *State v. Navone, supra.*) That type of answer is made here. Perhaps it is applicable to each instance of misconduct in argument in this case. There comes a time, however, when the cumulative effect of repetitive prejudicial error becomes so flagrant that no instruction or series of instructions can erase it and cure the error.

We are satisfied that the cumulative effect of the deputy prosecuting attorney's repeated improprieties in argument, together with his branding of the defendant's character witnesses as "his entire herd," constitutes such flagrant misconduct that no instruction or series of instruc-

tions to disregard what he had said could have cured the prejudicial error.

The state urges that, even so, the defendant is entitled to no relief in this court because no motion for a new trial was made. Reliance is placed upon *State v. Davis* (1952), 41 Wn. (2d) 535, 250 P. (2d) 548, as supporting the proposition that, even though the misconduct was so flagrant as to excuse the making of objections, motions to strike, and motions to instruct the jury to disregard what had been said or done, the claimed error should have been presented to the trial court by a motion for a new trial, inasmuch as one of the offices of a motion for a new trial is to give the trial court an opportunity to pass upon questions not before submitted for its ruling.

There was no contention in the *Davis* case, *supra,* that the comment with which we were there concerned was so prejudicial that no instruction to disregard could have cured it. It would seem that in that case there were two questions upon which the trial court could have exercised its discretion had they been presented on a motion for a new trial: Was what the trial court had said actually a comment on the evidence? If so, was it a prejudicial comment?

█ We have in the present case an entirely different situation. The very reason an objection and a request for an instruction to disregard is unnecessary, removes any element of discretion from the trial court so far as a new trial is concerned. If misconduct is so flagrant that no instruction can cure it, there is, in effect, a mistrial and a new trial is the only and the mandatory remedy.

The logic of the situation is so obvious that it has rarely been urged that a motion for a new trial is necessary where it has been held that there was misconduct so flagrant that what was said has, as soon as uttered, done its work beyond all power of remedy; or, as our cases say, "is so flagrant that no instruction would cure it." The supreme court of errors of Connecticut has said that a motion for a new trial is not necessary in such a case. *State v. Frost* (1926), 105 Conn. 326, 135 Atl. 446; *State v. Washelesky* (1908), 81

Conn. 22, 70 Atl. 62. Without placing emphasis upon the fact that there had been a motion for a new trial or discussing what issues had been raised thereon, this court has considered the question of whether a new trial should be granted under such circumstances. *State v. Lane, supra*; *State v. Melson, supra*; *State v. Meyerkamp, supra.*

In *State v. Perry, supra,* there was no motion for a new trial. After stating (p. 770) that

". . . in order to complain of improper remarks or misconduct on the part of the prosecuting attorney, the accused must make proper and timely objection thereto, unless such remarks or misconduct are so obviously prejudicial or so flagrant that an instruction could not have cured the inflammatory effect created thereby,"

this court considered the language complained of and concluded that it was within the range of legitimate argument. We did not let the failure to object, to ask for an instruction, or to move for a new trial prevent our going to the merits on the issue of whether the claimed misconduct was so flagrant that an instruction could not have cured it.

In *State v. Reeder, supra,* there had been a motion for a new trial; however, the misconduct which this court found to warrant a new trial was not presented to the trial court on that motion. The flagrant misconduct which was the basis on which this court granted a new trial was never presented to the trial court, or at least not adequately, on the motion for a new trial.

██  We are satisfied that, for the reason indicated, it was not necessary for the defendant to make a motion for a new trial in this case, although it seems to us that such a motion should always be made in order that the trial court might have an opportunity to grant the relief the misconduct warrants and thus save the time and expense of an appeal. However, it would seem that the utmost penalty that should be exacted of a defendant in such a case for his failure to seek, by way of a motion for a new trial, the remedy to which he is in any event entitled, would be a denial of his costs on his successful appeal.

To this point we have limited our citation of supporting

authority to those cases dealing with misconduct or claimed misconduct by the prosecuting attorney in his argument to the jury. Of interest also are the following cases, in which new trials were granted for other types of misconduct (in opening statements, or in the examination of witnesses), in which we either excused the failure to object or request instructions because no instruction could have cured the prejudicial error (*State v. O'Donnell* (1937), 191 Wash. 511, 71 P. (2d) 571; *State v. Smith* (1937), 189 Wash. 422, 65 P. (2d) 1075) or held that an instruction actually given did not cure the prejudicial error (*State v. Tweedy* (1931), 165 Wash. 281, 5 P. (2d) 335; *State v. Carr* (1930), 160 Wash. 83, 294 Pac. 1016; *State v. Bozovich* (1927), 145 Wash. 227, 259 Pac. 395).

We summarize the issues here determined:

■■■ The defendant did not have a fair trial by reason of the prejudicial misconduct of the deputy prosecuting attorney.

The defendant did not, either by his failure to make proper and timely objections, motions to strike, and requests for instructions to disregard the improper and prejudicial argument, or by his failure to move for a new trial, waive his right to urge the improper and prejudicial argument as error in this court, for the reason that the misconduct was so flagrant that no instruction given by the trial court could have cured it.

■■■ Lest this case be cited as authority for the proposition that a breach of one of the canons of ethics by a prosecuting attorney or his deputy warrants a new trial, we hasten to point out that such a breach is not necessarily a ground for reversal of a judgment and may not even constitute an error in law (as distinguished from a breach of ethics). However, such a breach can, under certain circumstances, constitute prejudicial error preventing a fair trial. *Ryan v. Ryan* (1956), 48 Wn. (2d) 593, 600, 295 P. (2d) 1111.

The judgment is reversed, and the cause is remanded for a new trial.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, FINLEY, WEAVER, and ROSELLINI, JJ., concur.

OTT, J. (dissenting)—I dissent for two reasons, (1) the majority disregard the laws of this state, our rules governing appeals, our decisions interpreting those laws and rules, and have determined *de novo* the issue of misconduct meriting a new trial, and (2), assuming that error or misconduct was established by the record, it did not constitute reversible error and did not merit the granting of a new trial.

Do the majority disregard our decisions and decide *de novo* the issue of misconduct meriting a new trial?

It is admitted that the alleged error is raised for the first time on appeal. This court has said:

"Appellants did not call the oversight to the trial court's attention and *cannot raise it upon appeal for the first time.* Appellants have not done their part in saving the lower court from error. [Citing case.]" (Italics mine.) *Bloomquist v. Buffelen Manufacturing Co.,* 47 Wn. (2d) 828, 831, 289 P. (2d) 1041 (1955).

The determination of an issue raised for the first time in this court is a determination *de novo.*

Do the majority disregard our rules of court and statutes governing appeals?

Rule on Appeal 17, 34A Wn. (2d) 24, provides:

"Upon an appeal from a judgment, the supreme court will review any intermediate order or determination of the superior court which involves the merits and materially affects the judgment, appearing upon the record sent from the superior court."

Since the record indicates that the superior court was not given an opportunity to enter any intermediate order or determination . . . which involves the merits and materially affects the judgment," *there is nothing for this court to review.* The majority have reviewed the record in disregard of this rule.

Do the majority disregard the statutes?

RCW 4.76.010 [*cf.* Rem. Rev. Stat., § 398] provides:

"A new trial is a reexamination of an issue of fact in the same court after a trial and decision by a jury, court, or referee."

RCW 4.76.020 [*cf.* Rem. Rev. Stat. (Sup.), § 399] provides, in part:

"The former verdict or other decision may be vacated and a new trial granted, on the motion of the party aggrieved, for any of the following causes materially affecting the substantial rights of such party: . . .

"(2) Misconduct of prevailing party . . .

"(8) Error in law occurring at the trial and excepted to at the time by the party making the application."

The office of a motion for a new trial is to present to the trial court errors alleged to have occurred, or questions not raised, during the progress of the trial, so that the court may have an opportunity to correct or rule upon them. *Dubcich v. Grand Lodge Ancient Order of United Workmen,* 33 Wash. 651, 74 Pac. 832 (1903).

We have held that a motion for a new trial is not necessary to obtain a review on appeal, where the error has been presented otherwise to the court for a ruling. *Tullis v. Shannon,* 3 Wash. 716, 29 Pac. 449 (1892); *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020 (1913); *Pacific Coast Coal Co. v. District No. 10, United Mine Workers of America,* 122 Wash. 423, 210 Pac. 953 (1922); *Keilhamer v. West Coast Telephone Co.,* 11 Wn. (2d) 24, 118 P. (2d) 173 (1941). *However, a motion for a new trial is necessary to preserve for review errors or questions not presented to the trial court for ruling during the trial or before judgment is entered. Dubcich v. Grand Lodge Ancient Order of United Workmen, supra; Papoutsikis v. Spokane, Portland & Seattle R. Co.,* 89 Wash. 1, 153 Pac. 1053 (1915); *Pacific Coast Coal Co. v. District No. 10, United Mine Workers of America, supra; In re Corneliusen's Estate,* 182 Wash. 488, 47 P. (2d) 843 (1935); *Unemployment Compensation Department v. Hunt,* 17 Wn. (2d) 228, 135 P. (2d) 89 (1943); *State v. Davis,* 41 Wn. (2d) 535, 250 P. (2d) 548 (1952); *Lee & Eastes v. Continental Carriers,* 44 Wn. (2d) 28, 265 P. (2d) 257 (1953).

In *State v. Davis, supra,* the appellant failed to make concomitant objection to the error of the trial court in commenting upon the evidence, and made no motion for a new trial. This court ruled upon the assignment of error with respect to the comments on the evidence as follows:

"Appellant is correct in saying that where the error relied upon is an asserted comment on the evidence by the trial judge, it is not necessary for the aggrieved party to make an objection in order to reserve the question for appellate review. [Citing cases.]  . . .

*"We do not agree with appellant, however, that the fact that he was excused from making an objection at the time the incident arose, also excused him from raising the question on a motion for a new trial.*

"The office of the motion for a new trial is to give the trial court an opportunity to pass upon questions not before submitted for its ruling. *Dubcich v. Grand Lodge A. O. U. W.,* 33 Wash. 651, 74 Pac. 832. Hence, those errors which could only have been raised on motion for new trial will not be considered on appeal, if not raised by this motion. [Citing cases.]

"This is but a corollary to the rule that questions which are not raised in any manner before the lower court will not be considered on appeal. [Citing cases.]" (Italics mine.)

In *Papoutsikis v. Spokane, Portland & Seattle R. Co., supra,* this court ruled upon an assignment of error relating to misconduct of counsel, stating:

"The second assignment of error is laid in misconduct of counsel for the company in remarks to the jury, but no exceptions appear to have been taken to these remarks when he uttered them. We have held, indeed (*Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486), that, even without concomitant objection, abuses of that kind may be raised in the trial court upon motion for new trial, *and thus be saved for consideration here.*" (Italics mine.)

See, also *State v. Hart,* 26 Wn. (2d) 776, 175 P. (2d) 944 (1946).

The majority disregard the statutes authorizing the granting of new trials by the trial court, and the fact that appellant here did not avail himself of the remedy provided therein.

Do the majority disregard the constitution of the state of Washington?

Art. IV, § 4, provides, in part:

"The supreme court shall have original jurisdiction in habeas corpus, and quo warranto and mandamus as to all state officers, and appellate jurisdiction in all actions and proceedings."

The issue of whether the defendant received a "fair trial" must be raised in the first instance at the trial court level. The supreme court is an appellate court. It does not have original jurisdiction to determine this issue. In the instant case, the majority are reversing the trial court in a matter upon which it never had an opportunity to exercise its discretion or make a ruling that can be reviewed here.

A determination *de novo* of the issue of new trial is not within the original jurisdiction of this court, as set out in the constitution.

I conclude that, as to the first contention raised by this dissent, the majority disregard the rules of court, the laws governing appeals, and our constitution, when they grant a new trial upon the record before us.

Secondly, assuming that this court has jurisdiction to review the error complained of, the alleged misconduct was not such as would merit a new trial for the reasons that (a) the statements were reasonable deductions based upon the evidence, (b) the questioned statements were in answer to arguments made by defense counsel, and (c), if the statements did constitute misconduct, they were not so prejudicial as to be incurable by an instruction.

The majority quote from Canon of Professional Ethics 15, 34A Wn. (2d) 131: "It is improper for a lawyer to assert in argument *his personal belief* in his client's innocence . . . ." (Italics mine.) The canon does not forbid an attorney to base his opinion of guilt or innocence upon the evidence. *State v. Buttry,* 199 Wash. 228, 90 P. (2d) 1026 (1939); *State v. Brown,* 35 Wn. (2d) 379, 213 P. (2d) 305 (1949). The canon was not violated by the statement upon which the majority rely, which was as follows:

" . . . I mean, that is my opinion about what this *evidence shows* and how clearly this *evidence indicates* that this girl has been violated. This girl has been sexually attacked . . . by her father. . . . This girl has been raped by her own father." (Italics mine.)

The majority say that "such language, prefaced with at least an implied 'The evidence establishes that,' would be excused if not approved. *State v. Brown* (1949), 35 Wn. (2d) 379, 213 P. (2d) 305, and cases therein cited."

In other words, the majority say that the statement should have been made as follows:

"The evidence establishes that, I mean, that is my opinion about what this evidence shows and how clearly this evidence indicates that this girl has been violated, etc."

The statement which the majority say would not be improper *adds but a third reference to the evidence.* In my opinion, the difference between the approved and the disapproved statement is a classic example of the proverbial "distinction without a difference."

The second statement relied upon by the majority is, " . . . I did it because in my good judgment these people were going to protect Joyce against this man."

We have held that, while intemperate assertions of opinion, *which are not based upon evidence,* will not be tolerated, prosecuting officers will be permitted a reasonable latitude in argumentative deduction from the evidence. *State v. Peeples,* 71 Wash. 451, 129 Pac. 108 (1912); *State v. Evans,* 145 Wash. 4, 258 Pac. 845 (1927); *State v. Buttry, supra; State v. Brown, supra.*

Was this statement beyond the bounds of reasonable latitude in making argumentative deduction from the evidence? The statement inferred that the complaining witness needed protection from her father. She stated in her testimony that she feared him, and that he had violently molested her in the past. The deputy prosecutor's statement was a reasonable deduction from this evidence. Defense counsel objected upon the ground that it expressed an opinion not based upon the record. The trial court undoubtedly having in

mind the testimony of the complaining witness, *properly* ruled, "Proceed."

The majority next rely upon the statement of the deputy prosecutor to the effect that sex crimes are not limited to any one segment of society and that they occur among the most respected members of society.

The court sustained an objection to this line of argument, and the prosecutor did not pursue it further. Defense counsel did not move that the jury be instructed to disregard the statement, and, in my opinion, the statement was not so prejudicial that an instruction would not have cured it. In such case, the error, if any, was not preserved for review. *State v. Taylor*, 47 Wn. (2d) 213, 287 P. (2d) 298 (1955).

As a further basis for the holding that there was prejudicial misconduct, the majority state that "Within a minute or two he [the deputy prosecutor] was discussing the war record of Jehovah's Witnesses as litter-bearers."

This statement was solicited by the defense counsel's argument to the jury, in which he strongly inferred that the people with whom the prosecutrix stayed after she left home were not to be believed because they were Jehovah's Witnesses, and because they refused to salute the flag.

In *State v. Wright*, 97 Wash. 304, 308, 166 Pac. 645 (1917), this court adopted the following rule:

" 'Remarks of the prosecuting attorney which ordinarily would be improper are not ground for exception if they are provoked by defendant's counsel and are in reply to his statements.' 12 Cyc. 582."

The rule has been followed consistently by this court. *State v. Van Luven*, 24 Wn. (2d) 241, 163 P. (2d) 600 (1945); *State v. Taylor, supra.*

The defendant's counsel having questioned the credibility of the witnesses, the deputy prosecutor was within the bounds of "reasonable latitude in argumentative deduction," in refuting the argument of defense counsel in the manner criticized by the majority.

The majority, in concluding their consideration of the state's closing argument, referred to a statement made by

the deputy prosecutor which he labeled, "my honest opinion."

There is only one such remark in the closing argument. The statement, in so far as it is material here, is as follows:

". . . it is my honest opinion, although the court has instructed you your minds are to be kept open until you get inside that jury room, I certainly think it is not humanly possible in this case that you haven't decided as to whether or not that little eighteen year old girl is telling a lie or telling the absolute truth, and whether this man here, who is her father, is telling a lie or is telling the truth."

This statement is not an expression of opinion as to the guilt or innocence of the accused, in violation of Canon of Professional Ethics 15, and could not have prejudiced the jury against the defendant.

The final instance of alleged misconduct to which the majority refers, and which they say could not be erased from the minds of the jurors and increased the adverse effect of the misconduct in closing argument, was a statement made by the prosecutor, after two of the defense character witnesses had testified and volunteered unsolicited answers. While the court was admonishing the character witness then on the stand, the following occurred:

"MR REGAL: Well, I can anticipate problems with his entire herd that will be called in here. MR. HUDSON: I consider that highly prejudicial, your honor. THE COURT: Just a minute. I have ruled. Counsel's remarks will also be stricken and disregarded by the jury. We subpoena witnesses both for the State and for the defendant. MR. REGAL: Yes, your honor. THE COURT: And I try to conduct this case fair both to the State and to the defendant. It is a question for the jury to decide, the guilt or innocence of the defendant, but when we issue subpoenas which is a process of our court of record, the witnesses who appear in response to an order of the court, even if the number is large, are not to be designated by an attorney who is an officer of the court, as a herd. MR. REGAL: I apologize to the court and to the people that I referred to in that manner. THE COURT: Very well. MR. REGAL: Crowd, I meant to say."

Here the court instructed the jury to disregard the deputy prosecutor's statements. The court's admonition was followed by the attorney's apology. The court's admonition

was detrimental to the state's case, and completely erased any possible prejudice to defendant which may have resulted from the deputy prosecutor's statement.

With reference to this remark, juries are presumed to follow the court's instructions. *State v. Kelsey,* 46 Wn. (2d) 617, 283 P. (2d) 982 (1955). Applying the rule to the instant case, the court having instructed the jury to disregard the statement, the presumption is that they did so.

The majority admit that the trial court must be affirmed, unless the misconduct of the deputy prosecuting attorney was so flagrant as to have denied the defendant a fair trial as guaranteed by the constitution. A fair trial means a trial conducted according to the laws of the state and established rules of practice and procedure. Such a trial was afforded this defendant, and either he failed to avail himself of his statutory rights or the alleged abuses were so minor that even his counsel did not deem them objectionable.

An analysis of the points raised by the majority indicates that none of them, individually or collectively, establishes error meriting the granting of a new trial by this court (were that issue properly before us), and that they fall far short of the test, " '. . . unless the misconduct be so flagrant that no instruction would cure it,' " announced in *State v. Lane,* 37 Wn. (2d) 145, 151, 222 P. (2d) 394 (1950).

If trials *de novo* are to be granted in this court, and judgments reversed upon the basis of misconduct of a prosecuting attorney in his closing argument, then the error meriting the granting of a new trial *should at least be predicated upon misconduct affecting a material issue of the offense charged.*

Finally, the framers of our constitution never intended that the supreme court should have original jurisdiction in criminal cases, nor was it intended that this *appellate* court should reverse a trial judge upon alleged errors which were never called to his attention and upon which he had no opportunity to rule.

For the reasons stated, the judgment of the trial court should be affirmed.

MALLERY, J., concurs with OTT, J.