# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70563-6-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ABDIRAHMAN SAKAWE, | ) | |
| Appellant. | ) | FILED: November 30, 2015 |

TRICKEY, J. — When a prosecutor who represented the State at the first trial is called as a witness at the retrial, a trial court must consider whether the prosecutor is able to testify objectively and whether the dual role of the prosecutor will unduly influence the jury's credibility determinations. Here, Deputy Prosecutor Julie Kline represented the State in the first trial on its charges of robbery and assault in the second degree and attempted robbery in the second degree against Abdirahman Sakawe. Over defense counsel's objection, Deputy Prosecutor Kline testified as a critical witness at the retrial on the dispositive and contested issue of identification. Under the circumstances of this case, we hold that the trial court abused its discretion in allowing Deputy Prosecutor Kline's testimony. Accordingly, we reverse and remand for a new trial.

## FACTS

"Charles" Ka Chen and "Andre" Chuan-Wen Chuang were waiting at a bus stop in Des Moines, Washington. A group of approximately 10 people approached and surrounded them. A black man, wearing what Chuang described as a red

hat,[1] grabbed Chen's throat and demanded his cell phone. Chuang grabbed the man's elbow, and another member of the group snatched Chuang's cell phone.[2] A third man seized Chuang by his throat and began to punch him.

Chuang and Chen were able to push their way out of the group and escape. Two members of the group chased Chuang and Chen as they ran down the street. Chuang and Chen ran inside the nearby Garden Suites hotel lobby, where Chuang was residing.

There were no other people in the lobby. Chen handed his cell phone to Catherine Wood, the hotel desk clerk sitting behind a counter. One of the members of the group followed Chuang and Chen inside the hotel lobby, while the other man who chased them remained outside the hotel's front doors.

Chuang testified that the man who entered the hotel was the one wearing the red hat who had grabbed Chen's throat. That man punched Chuang and attempted to jump over the counter to grab the cell phone from Wood. The two men left the hotel after Wood yelled at them to do so.

City of Des Moines Police Officers Randy Gallagher, Eddie Ochart, and David Shields responded to the hotel. While Officer Shields spoke with Chuang and Chen, Officers Ochart and Gallagher watched the hotel's surveillance video footage that captured the events that took place in the hotel lobby. Because of the poor quality of the resolution and the small screen size, the officers could only discern general physical features of the man who confronted Chuang, including his clothing and general body type.

---

[1] Chuang could not recall what specific article of clothing the man was wearing.
[2] Chuang could not remember what the person who had taken his cell phone looked like.

2

While they were viewing the video footage, the officers received a dispatch to a location within a few blocks of the hotel. Officers Ochart and Gallagher left the hotel to respond to that 911 call.

When Officer Gallagher arrived at the scene away from the hotel, he noticed a man in a white hoodie pulled around his face with another man dressed in dark clothing. Because the men were wearing clothing consistent with that which he had just seen in the video, Officer Gallagher believed that those men were associated with the crime at the hotel.

Officers Gallagher and Ochart detained the two men. They identified the man in the white hoodie as Mahad Warsame, and the man in the dark clothing as Shirwa Muse. Another officer found on Muse a cell phone with Asian characters displayed on it and attached to a distinctive keychain. Officer Shields escorted Chen and Chuang to the scene to identify Warsame and Muse. Neither was able to identify Warsame or Muse. However, Chuang identified the cell phone as belonging to him.

While the officers were transferring Muse into another patrol vehicle, Muse escaped on foot, running into the nearby woods. K-9 Officer Daniel O'Neil arrived with his dog Ronin to assist in locating Muse. After O'Neil commanded Ronin to seek out the scent, Ronin ran toward a large tree and surrounding bushes, approximately 15 feet from where the officers detained Muse and Warsame. There, Abdirahman Sakawe was sitting under the tree, holding his hands around Ronin's face to keep him away. Once Sakawe released Ronin, Ronin bit and held Sakawe until Officer O'Neil commanded Ronin to release.

Officer Gallagher testified that Sakawe was wearing a black and red jacket. According to Officer Shields, Sakawe was wearing "a red hoodie or a red sweatshirt and I think maybe a black jacket."[3] The officers did not immediately suspect Sakawe's involvement in the crime they were investigating, and restarted the canine track in an effort to find Muse. Officer Shields waited with Sakawe as paramedics arrived to treat Sakawe's dog bite. The paramedics transported Sakawe to a hospital to treat his wound.

Officer O'Neil went to the hospital to speak to Sakawe. Officer O'Neil observed Sakawe was wearing dark pants, a red hoodie, and a black shirt or sweatshirt underneath. Complying with Officer Gallagher's request, Officer O'Neil collected Sakawe's sweatshirt for evidence.

In a statement provided to the police within a week after the crime, a detective asked Wood to describe the suspect in the lobby. Wood responded, "I really couldn't tell you. The one that was doing the hitting was wearing like a black and red type of sweatshirt hoodie."[4]

2008 Trial and Subsequent Personal Restraint Petition

In May 2008, the State charged Sakawe by amended information with the crimes of second degree robbery, second degree attempted robbery, and second degree assault. Deputy Prosecutor Kline was the assigned prosecutor representing the State. Following trial, a jury convicted Sakawe as charged.[5]

---

[3] 6 Report of Proceedings (RP) (June 25, 2013) at 57.
[4] 5 RP (June 24, 2013) at 159.
[5] The second degree attempted robbery conviction was stricken from the judgment and sentence because it merged with the second degree assault conviction.

In 2012, Sakawe filed a personal restraint petition (PRP) and we remanded to the trial court for a reference hearing. Deputy Prosecutor Kline represented the State at the reference hearing. On June 4, 2012, we granted the PRP and reversed Sakawe's convictions based on his ineffective assistance of counsel claim. In re Sakawe, noted at 168 Wn. App. 1028, 2012 WL 1980895.

2013 Retrial

On remand for a new trial in June 2013, Deputy Prosecutor Patrick Hinds represented the State on the charges against Sakawe.

The defense filed a CrR 3.6 motion to suppress evidence of Sakawe's clothing that Officer O'Neil had seized, asserting it was seized without a warrant and was not properly seized incident to arrest.

During the 2008 trial, the State had difficulties playing a copy of the surveillance video footage on its own equipment. Deputy Prosecutor Kline had to retrieve a computer from the hotel and have it physically brought to the courtroom to play the footage for the jury. After the 2008 trial, the hotel's computer was sold or recycled.

At the retrial in 2013, the State was unable to present the video footage to the jury because the equipment belonging to the prosecutor's office or the police department could not play the video. As a result, the State wanted to call Detective Cathy Savage as a witness to elicit her testimony concerning her unsuccessful attempt to track down the hotel's computer that played the video in the 2008 trial. The State also sought Detective Savage's testimony as a person who watched the video to explain its content.

The State also proposed to call Deputy Prosecutor Kline as a witness. Deputy Prosecutor Hinds asserted three reasons for Deputy Prosecutor Kline's testimony. First, during the course of the 2008 proceedings, Deputy Prosecutor Kline "watched the video probably more times than anyone else and therefore has the best memory and is most familiar with what it showed and [would] be able to describe it."[6] Second, Deputy Prosecutor Kline would testify to the various technical problems the State encountered in the 2008 trial. Third, in the event Chuang were unavailable, Deputy Prosecutor Kline would provide context to the jury in understanding Chuang's former testimony.[7]

The defense objected to the State's request to call Deputy Prosecutor Kline as a witness in light of her previous role as prosecutor on the case. The defense argued that Rules of Professional Conduct (RPC) 3.7 prohibited Deputy Prosecutor Kline from acting as a witness and an advocate. He also contended that it would be problematic to have Deputy Prosecutor Kline testify to the content of the video given that two police officer witnesses would provide that testimony.

In arguing against the objection, the State asserted that RPC 3.7 did not apply because Deputy Prosecutor Kline was not the prosecutor in the retrial. Thus, she was not an advocate requiring disqualification.

The trial court ruled it would allow Deputy Prosecutor Kline to testify about her recollection of the content of the video and the technical difficulties she encountered in playing the surveillance video in 2008, finding that RPC 3.7 did not preclude her testimony:

---

[6] 2 RP (June 10, 2013) at 33.
[7] The prosecution was unable to locate Chuang to testify at the 2013 trial and, consequently, read aloud excerpts of his testimony from the 2008 trial.

> THE COURT: Having taken a look at the Rules of Professional Conduct, I don't believe that they prohibit her testifying in this case, even where there is an alternative manner in which the State could present the information by way of the detective.
>
> I don't think there is any -- I don't think there is a legal reason for me to preclude the testimony, nor do I think that there is a conflict under the ethics rules even though I felt that there would be one.
>
> I am particularly concerned about the testimony that I would describe as more substantive where Mr. Hinds, you are anticipating having Ms. Kline testify about what she saw on the video, but I don't think I have a legal basis to preclude that. So you may do so.[8]

After the trial court granted the defense motion to suppress Sakawe's clothing, the defense moved to exclude the testimony of Deputy Prosecutor Kline and Detective Savage about their memory of the content of the surveillance video—specifically, the clothing worn by the suspect who entered the hotel lobby in the video—because they had seen Sakawe's clothing after it was illegally seized. The defense contended that it would be impossible for Deputy Prosecutor Kline to separate in her memory the clothing she recalled seeing in the video from her observations of Sakawe's suppressed clothing.

The trial court heard testimony from Deputy Prosecutor Kline outside the presence of the jury. Deputy Prosecutor Kline testified that she had seen the video about 10 to 15 times. She testified that she had viewed the video about 5 to 8 times before she had seen the clothing that was later suppressed. Deputy Prosecutor Kline also testified she had seen the clothing twice—once during an "evidence view" with defense counsel before the 2008 trial, and then again at the 2008 trial.[9] She never saw photographs of the clothing.

---

[8] 2 RP at 88.
[9] 7 RP (June 26, 2013) at 75-76.

Deputy Prosecutor Kline testified that before she saw the clothing, she had a very good recollection of the video. She described the clothing she saw in the video. Deputy Prosecutor Kline also testified that the clothing "matched exactly what was in the video of the person who came all the way into the hotel."[10]

The State asked Deputy Prosecutor Kline if there were aspects of the clothing that she knew about only because she viewed the seized clothing in evidence. Deputy Prosecutor Kline responded that she learned that the black hood was made of white sheepskin lining. In the video she saw something white inside the hood the suspect was wearing, but could not discern whether it was white lining or some object stuck in the hood of the suspect's zip-up sweatshirt. She was also able to see the red top the suspect was wearing in its entirety, given that in the video the suspect's black sweatshirt was zipped up midway over the red shirt underneath.

Deputy Prosecutor Kline also testified outside the jury's presence that she believed she could separate what she remembered seeing in the video from what she remembered seeing in person because she watched the video many times before seeing the clothing in person. She told the court she would be able to "parse out" in her testimony before the jury what she remembered seeing in the video without interjecting facts based on the clothing she saw in person.

The trial court ruled that Deputy Prosecutor Kline could testify only with regard to what she had seen in the video. The trial court ruled that Detective Savage could testify to the content of the video as part of her investigation, but not to her observations of the clothing that was illegally seized.

---

[10] 7 RP at 77.

When testifying at the retrial, Chen was unable to recall what the man who had entered the hotel looked like, other than that his height was similar to Chen's height. Chen was also unable to identify Sakawe as the man who had followed him into the hotel.

At the retrial, Officer Ochart testified that the video footage showed a man enter the hotel front doors wearing what appeared to be a light colored "hoodie type jacket."[11] He then saw another individual enter the lobby and initiate an altercation with another person. Officer Ochart described the man's clothing as a red and black combination.

Officer Gallagher also testified at the retrial as to the content of the video footage. He testified that the video showed a man enter the hotel lobby, advance toward a person inside, confront him, and then punch him. Officer Gallagher said that the man who entered the lobby was approximately 5 feet 8 inches tall in height with a "medium to slight build," dark skinned, and wearing a black and red jacket with a red and black baseball hat.[12] Officer Gallagher saw two other men holding the front doors open. One of them was wearing a white hoodie pulled tightly around his face and the other was wearing nondescript dark clothing.

Deputy Prosecutor Kline testified that she was the assigned prosecuting attorney in the 2008 trial. She described the ongoing difficulty she experienced with the surveillance video in the 2008 trial. She also described her recollection of the content of the video, which included a detailed description of what the suspect was wearing.

---

[11] 4 RP (June 18, 2013) at 98.
[12] 5 RP at 30.

9

The jury convicted Sakawe of second degree robbery, attempted second degree robbery, and second degree assault. The trial court imposed a term of 13 months incarceration and 18 to 36 months of community custody.

Sakawe appeals.

## ANALYSIS

On appeal, Sakawe argues that permitting Deputy Prosecutor Kline to testify about identification violated due process and denied him a fair trial. The State responds that the trial court properly exercised its discretion as an evidentiary matter in allowing the testimony. We agree with the State that the issue on appeal is whether the trial court abused its discretion.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668, 230 P.3d 583 (2010). "Abuse exists when the trial court's exercise of discretion is 'manifestly unreasonable or based upon untenable grounds or reasons.'" State v. Darden, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002) (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" Salas, 168 Wn.2d at 669 (quoting In re Pers. Restraint of Duncan, 167 Wn.2d 398, 402-03, 219 P.3d 666 (2009)).

In determining whether the trial court properly exercised its discretion, we begin by considering whether RPC 3.7 precluded Deputy Prosecutor Kline from testifying as a witness at the 2013 retrial. RPC 3.7 provides for the following:

> **(a)** A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case;

(3) disqualification of the lawyer would work substantial hardship on the client; or

(4) the lawyer has been called by the opposing party and the court rules that the lawyer may continue to act as an advocate.

**(b)** A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

The trial court determined that RPC 3.7 by its terms did not prevent Deputy Prosecutor Kline from testifying because she was not the advocate for the State in the retrial. We agree that there was no RPC 3.7 violation in this case.

However, we conclude that the policies underlying RPC 3.7 were important in deciding whether or not to allow Deputy Prosecutor Kline's testimony about the content of the video. RPC 3.7 finds its historical antecedent in a common law principle known as the advocate witness rule. See State v. Bland, 90 Wn. App. 677, 679, 953 P.2d 126 (1998). Generally speaking, the advocate witness rule "'prohibits an attorney from appearing as both a witness and an advocate in the same litigation.'" State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014) (quoting United States v. Prantil, 764 F.2d 548, 552-53 (9th Cir. 1985)). "This venerable rule is a necessary corollary to the more fundamental tenet of our adversarial system that juries are to ground their decisions on the facts of a case and not on the integrity or credibility of the advocates." Prantil, 764 F.2d at 553. Owing to this, it has been said that enforcement of the rule "is more than just an ethical obligation of individual counsel," it is, in fact, "a matter of institutional concern implicating the basic foundations of our system of justice." Prantil, 764 F.2d at 553. Hence, to fail to enforce the rule is to hazard our system's first principles.

In a criminal prosecution, "where so much is at stake for the defendant," certain of these first principles—not the least of which is "objectivity in the presentation of evidence"—are secured by the advocate witness rule. United States v. Alu, 246 F.2d 29, 34 (2d Cir. 1957); see also Prantil, 764 F.2d at 553. For instance, by barring testimony from the participating prosecutor, the advocate witness rule "'eliminates the risk that a testifying prosecutor will not be a fully objective witness given his [or her] position as an advocate for the government.'" Prantil, 764 F.2d at 553 (quoting United States v. Johnston, 690 F.2d 638, 643 (7th Cir. 1982)).

In addition, "the rule prevents the prestige and prominence of the prosecutor's office from being attributed to testimony by a testifying prosecutor." Prantil, 764 F.2d at 553; see also United States v. Edwards, 154 F.3d 915, 921 (9th Cir. 1998) ("Essentially, the danger in having a prosecutor testify as a witness is that jurors will automatically presume the prosecutor to be credible and will not consider critically any evidence that may suggest otherwise.").

Furthermore, "the rule obviates the possibility of jury confusion from the dual role of the prosecutor wherein the trier-of-fact is asked to segregate the exhortations of the advocate from the testimonial accounts of the witness." Prantil, 764 F.2d at 553. "Finally, the rule expresses an institutional concern, especially pronounced when the government is a litigant, that public confidence in our criminal justice system not be eroded by even the appearance of impropriety." Prantil, 764 F.2d at 553.

Where the deputy prosecutor in the first trial is called as a witness at the retrial, two principles that underlie the advocate witness rule are present. First, the

concern "'that a testifying prosecutor will not be a fully objective witness given his [or her] position as an advocate for the government.'" Prantil, 764 F.2d at 553 (quoting Johnston, 690 F.2d at 643). Second, the concern that "jurors will be unduly influenced by the prestige and prominence of the prosecutor's office and will base their credibility determinations on improper factors." Edwards, 154 F.3d at 921; see also State v. Monday, 171 Wn.2d 667, 677, 257 P.3d 551 (2011) ("A '[f]air trial' certainly implies a trial in which the attorney representing the [S]tate does not throw the prestige of his public office . . . into the scales against the accused.") (first alteration in original) (internal quotation marks omitted) (quoting State v. Case, 49 Wn.2d 66, 71, 298 P.2d 500 (1956)). The danger is that "jurors will automatically presume the prosecutor to be credible and will not consider critically any evidence that may suggest otherwise." Edwards, 154 F.3d at 921.

Applying these principles here, we hold that the trial court abused its discretion in denying the motion to preclude Deputy Prosecutor Kline from testifying as a fact witness on the central dispositive and disputed question of identity at the retrial. Deputy Prosecutor Kline's ability to be an objective witness was compromised by her role as the assigned prosecutor in the first trial and at the reference hearing. In 2008, Deputy Prosecutor Kline's primary objective was obtaining a conviction against Sakawe.

There is also the concern that the jury was improperly influenced by the fact of Deputy Prosecutor Kline's role as a prosecutor. None of the other eyewitnesses were able to describe in detail the appearance of the man who entered the lobby. Wood could not describe the man who entered the lobby, except she noted that he was a black male wearing a "black and red type of sweatshirt hoodie" and was

similar in size to Chuang.[13] When asked if the man was present in the courtroom, she responded, "I don't know."[14] Chen was unable to identify Sakawe as the perpetrator.

The primary method of connecting Sakawe to the crime was by establishing that the clothing the officers found on him on the night in question matched the clothing worn by the suspect in the surveillance video. Because the video footage was of poor quality, only general physical features could be seen. Officers Ochart and Gallagher viewed the video footage one time only. Officer Ochart testified that in the video, the man entering the lobby was wearing red and black clothing. Officer Gallagher testified that the man was wearing a black and red jacket and red and black hat.

However, Deputy Prosecutor Kline's description of the clothing was much more detailed and specific. Deputy Prosecutor Kline testified that in preparation for the 2008 trial, she had viewed the video between 10 to 15 times. She further testified that the man who entered the lobby was "wearing a black zip-up jacket with a hood and a red top of some sort underneath with some -- what looked like white block lettering -- peeking out sort of over the top of the zipper."[15] Deputy Prosecutor Kline also observed the man wearing a black and red hat.

The jury was well aware of Deputy Prosecutor Kline's role as a prosecutor in the first trial. For example, at the outset of direct examination, she explained to

---

[13] 5 RP at 159.
[14] 5 RP at 148.
[15] 7 RP at 91.

the jury that she was the assigned attorney in the 2008 case, "State of Washington v. Abdirahman Sakawe."[16]

We also conclude that Deputy Prosecutor Kline's testimony presented a risk that the jury accorded undue credit to her testimony concerning her descriptions of the surveillance video content. The significance of Deputy Prosecutor Kline's role and her testimony at the 2013 retrial ran afoul of the concern that the jurors were unduly influenced and based their determination of guilt on improper factors. We conclude that the trial court should not have allowed Deputy Prosecutor Kline to testify about the content of the video footage.

Because the trial court abused its discretion, we reverse Sakawe's convictions and remand for a new trial.[17] On remand, the State can call Deputy Prosecutor Kline only to testify about the technical problems experienced in replaying the video footage.

Trickey, J.

WE CONCUR:

Cox, J.

---

[16] 7 RP at 71, 85.
[17] Sakawe raises additional contentions on appeal. Because we reverse Sakawe's conviction on the ground that the trial court erred by permitting Deputy Prosecutor Kline to testify about the video footage, we decline to address those arguments here.