[No. 33841. Department Two. September 5, 1957.]

BENNIE JOE FORD, *Respondent*, v. UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA *et al.*, *Appellants.*[1]

[1]Reported in 315 P. (2d) 299.

*Hugh B. Horton* and *Miller, Jansen & Sackmann,* for appellants.

*Charles T. Morbeck* and *Cross & Whitmore,* for respondent.

ROSELLINI, J.—On March 26, 1952, at approximately six-thirty p.m., the plaintiff was severely and permanently injured when the automobile in which he was a passenger collided with an automobile operated by one Craig B. Otteson, whose negligence caused the accident. Otteson, who was instantly killed, was at that time the business agent of Millwrights Local No. 1699 (hereafter referred to as the local) which was chartered under the constitution

and laws of the United Brotherhood of Carpenters and Joiners of America (hereafter called the international).

The plaintiff, having lost his cause of action against the decedent, under the law as it existed at that time, brought this action against the local union and the united brotherhood, alleging that Otteson was the agent of both and was acting within the scope of his employment when the accident occurred. The jury returned a verdict in favor of the plaintiff against both defendants.

■ The defendants challenge the sufficiency of the evidence to support a verdict against either of them. Upon such a challenge, of course, this court must view the evidence most favorably to the successful party, and all material evidence favorable to his contentions must be accepted as true. *Arthurs v. National Postal Transport Ass'n*, 49 Wn. (2d) 570, 304 P. (2d) 685. Unless this court can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict, it will not be disturbed. *Sigurdson v. Seattle*, 48 Wn. (2d) 155, 292 P. (2d) 214.

The accident in question occurred in Adams county, at a point approximately five miles northeast of Ritzville on the Ritzville-Spokane highway. Otteson had left his office at Pasco at approximately four-thirty p.m., after having told a friend, Lulu Adamson, who was employed by another union in the same building, and with whom he had previously made an engagement for that evening, that he had to go to Spokane to meet two men and then drive to Wenatchee to "look over the work" and try to get a dispute settled. This was the only evidence concerning the purpose which Otteson had in mind in going to Spokane. It was partly corroborated by the fact that, on the same day, he had drawn an advance for mileage for a trip to Wenatchee, and by the fact that the international representative was in Wenatchee the following day and apparently had reached there by way of Spokane. Lulu Adamson testified, by deposition, that Otteson had planned to go directly to Wenatchee but had received a call about two p.m., advising him that he should meet the two men in Spokane.

The evidence disclosed that, under the by-laws of the local, the business agent was elected by the membership and his employment could be terminated by a majority vote of that membership. He was paid by the local, and his duties were to perpetuate the jurisdiction of the local and defend the rights of its members. He was ex-officio delegate to all meetings, councils, and conventions where his presence was necessary for the welfare of the local. He was required to present a written report of his activities at each meeting.

There was evidence that Otteson, who used his own automobile, had done a considerable amount of traveling, both within the jurisdiction of the local and to nearby points outside, including Wenatchee and, on at least one occasion, Spokane, and had been reimbursed for mileage. There was also evidence that the carpenters' local in Wenatchee had at one time had an agreement with the millwrights' local in Pasco for the purpose of protecting the interests of the millwrights working within the jurisdiction of the Wenatchee local. The agreement was considered necessary because there was no millwrights' local in Wenatchee. However, the agreement had been terminated, and since its termination, the millwrights' local in Pasco, through its business agent, and the international, through its representative, Mark Burlingame, had been endeavoring to re-establish the agreement and to protect the interests of millwrights working in the Wenatchee area. There was also evidence that the international representative was in Wenatchee on March 27th in regard to these problems, and that Otteson's successor went there the following week for a discussion with the agent of the carpenters' local.

There was also evidence that the international co-operated with the local, and the local with the international, in achieving their mutual aims.

The defendants admit that this evidence was sufficient to establish that Otteson was the agent of the local, but not of the international, and they maintain that the only evidence tending to show that Otteson was within the scope

of his employment at the time of the accident, the deposition of Lulu Adamson, was inadmissible.

The deposition was taken in California, and counsel for the defendants was present and cross-examined her. Counsel now raise certain objections to the deposition which were not raised at that time. Rule of Pleading, Practice and Procedure 32 (c) (2), 34A Wn. (2d) 96, provides that such objections are waived if not raised at the time when they can be obviated, removed or cured. It is also objected that the commissioner's certificate was not attached to the deposition when it was mailed to the clerk of the court but was submitted under separate cover. This objection was raised before the trial of the cause, and the court ordered the deposition returned to the commissioner with directions to certify its contents if they were correct. This was done, and the deposition was returned to the court with the certificate attached. If there was any error in the original manner of certification, it was thereby cured.

It is urged that the court erred in admitting evidence contained in the deposition of Otteson's declared intention of going to Wenatchee and Spokane on union business. It is true that agency may not be proved by the declarations of the alleged agent, but this evidence was not offered to prove the fact of agency or the scope of employment, but was offered to show that the decedent was acting within the scope of his agency at the time of the accident. The existence of a plan or design to do a specific act is relevant to show that the act was probably done as planned, and the design or plan may be evidenced circumstantially by the person's own statements as to its existence. Wigmore on Evidence (3d ed.) Vol. I, § 102, and Vol. VI, § 1725. In *Glover v. Orofino Mercantile Co.*, 53 Idaho 339, 23 P. (2d) 1115, the rule was held applicable on the issue of whether the decedent was acting for his employer, and his statement of intention to go to the town in question to attend to some work was admitted. The rule has also been recognized in this state in *Doke v. United Pac. Ins. Co.*, 15 Wn. (2d) 536, 131 P. (2d) 436, 135 P. (2d) 71; *State v. Payne*, 25 Wn. (2d) 407, 171 P.

(2d) 227, 175 P. (2d) 494; *State v. Hart*, 26 Wn. (2d) 776, 175 P. (2d) 944; *State v. Paschall*, 182 Wash. 304, 47 P. (2d) 15; and *State v. Power*, 24 Wash. 34, 63 Pac. 1112, 63 L. R. A. 902.

The only limitations as to the use of such statements, Professor Wigmore points out, are that the statements must be of a present existing state of mind and must appear to have been made in a natural manner and not under circumstances of suspicion. It was natural for the decedent to explain to the woman with whom he had an engagement for the evening the reason why he would be unable to keep it; and the fact that the international representative did arrive in Wenatchee on the evening of the accident, and apparently did travel through Spokane, tends to corroborate that intention.

The plaintiff in this case was handicapped by the fact that all of the persons who were likely to know whether the proposed trip was undertaken for union purposes were adverse to the plaintiff and testified reluctantly and with faltering memories. He was forced to rely upon circumstantial evidence to prove his case. The declarations made to Miss Adamson appear to have been made in a natural manner; they are at least partly corroborated by other circumstances, and we see no error in their admission as evidence of Otteson's intention.

This evidence, taken in conjunction with the evidence that Otteson, as business agent of the local, was authorized to travel within and without the local's territory on its business, was sufficient to support a verdict against the local.

It is urged that there was no evidence to support a finding that Otteson was the agent of the international as well as the local, and that consequently the international should have been dismissed from the action. The international and the local, the appellants say, are separate autonomies; the business agent is hired by the local and paid by the local, and his duties are to promote the interests of the local. On the other hand, the respondent points out that Otteson was

under the apparent control of the international, since he had accompanied the representative of the international on trips to Wenatchee, outside the jurisdiction of his local, to confer with the agents of another local on matters concerning its membership, and that he was under the apparent direction and control of the international representative in doing these things. In addition, the local is subject to the provisions of the constitution and by-laws of the international and to its mandates. The Pasco millwrights' local and the Wenatchee carpenters' local had been at loggerheads over the policing of millwrights' work, the respondent states, and it was in the interests of the international to keep peace with these two locals. Therefore, Otteson was present at meetings with the Wenatchee business agent as a representative of the international.

With this latter logic, we cannot agree. The mere fact that the international was interested in settling the dispute, assuming there was a dispute, does not make a representative of one of the parties to it an agent of the intermediator. If Otteson was an agent of the international, it can only be because he was authorized to act on behalf of the international.

■ Agency is defined in Restatement, Agency, §1, as follows:

"Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

We are not here concerned with the principles of apparent agency, which apply when an alleged principal has held out another as his agent and induced a third person to rely on the existence of the agency, where none in fact existed. There is no element of reliance involved in a case such as this, and the agency must have existed in fact if the international is to be held.

■ We think the evidence cannot support a finding that Otteson was authorized to act for the international. The international had its own representative present at the meetings with the business agent of the Wenatchee local;

and the fact that Otteson co-operated with this representative, or that the representative co-operated with Otteson, does not give rise to the inference that Otteson was also an agent of the international.

 This does not mean that under no circumstances could the international adopt an officer or employee of the local as its agent to act on its behalf. But it is a recognized rule in cases involving labor union locals, which are subordinate components of the international unions but have a prescribed independence in the management of their internal affairs, that the international will not be held liable for obligations incurred or acts done by the local in the ordinary conduct of the latter's affairs in the absence of participation in or ratification of those obligations or acts. *Seidner v. Fish,* 131 Misc. 203, 226 N. Y. S. 411; *Di Maio v. Local 80-A, United Packinghouse Workers of America,* 29 N. J. Super. 341, 102 A. (2d) 480. Such participation or ratification occurs when the international takes over the affairs of the local and administers them or participates in their administration. Here, the international had taken no steps to intervene in the affairs of Otteson's local. The fact that it was in the interest of the international and also the Pasco local (which would supply some of these millwrights) to see that millwright work in the Wenatchee area was done by millwrights, does not support an inference that the international had adopted the local business manager as its agent in this matter.

We conclude that the international should have been dismissed as a defendant for lack of evidence that Otteson was acting as its agent at the time and place of the accident.

We have carefully considered the remaining seventeen assignments of error and fail to find anything prejudicial in them. We deem it unnecessary to discuss these assignments, as it would not augment the decisional law of the state.

We find no error in so far as the defendant local is concerned, and the judgment against this defendant is

affirmed. The judgment against the international is reversed and this defendant is dismissed.

HILL, C. J., SCHWELLENBACH, DONWORTH, and FOSTER, JJ., concur.

October 18, 1957. Petition for rehearing denied.