139 F.3d 674
 Fed. Sec. L. Rep. P 90,166, 98 Cal. Daily Op. Serv. 1915,
98 Daily Journal D.A.R. 2681
SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,
v.
Michael J. COLELLO, Defendant-Appellant,
Cross Financial Svc., Inc.; Owen R. Fox; Carroll E.
Siemens; Bruce Franklin; Douglas S. Cross, Defendants.
 No. 95-56688.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 6, 1998.
Decided March 18, 1998.
 
 Frederick D. Friedman and Edward A. Klein, O'Neill, Lysaght & Sun, Santa Monica, California, for defendant-appellant.
 Richard M. Humes and Noran J. Camp, Securities and Exchange Commission, Washington, DC, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California Richard Paez, District Judge, Presiding. D.C. No. CV-94-4228-RAP.
 Before: LAY,* GOODWIN and SCHROEDER, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 This appeal challenges the right of the Securities and Exchange Commission (the "SEC") to recover, from a non-party to a fraud, investor funds traced to the "nominal defendant" in an action in personam. In the district court proceedings against a number of defendants, the SEC named Michael Colello as a nominal defendant after he had been dismissed as a party to the fraud. Upon a motion for summary judgment, the district court ordered Colello to disgorge over $2.6 million. On appeal, Colello argues that the district court lacked subject matter jurisdiction and that, in any event, summary judgment was in error. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 Facts and Procedural Background
 
 2
 This case arises from a scheme whereby a company called Cross Financial Services, Inc. ("CFS") and a number of individuals defrauded more than 700 public investors out of more than $21 million. The SEC claims that Colello received approximately $2.9 million of the $21 million. Colello claims that the money he received was to obtain letters of credit for CFS, that he did not keep most of it, and that what he did retain was payment for services rendered.
 
 
 3
 The SEC sued the perpetrators, initially naming Colello as a participant in the scheme to defraud. After losing on a motion for a preliminary injunction against Colello, the SEC amended its complaint to name Colello as a defendant "solely for the purpose of obtaining full relief." The SEC and Colello then cross-filed motions for summary judgment. The district court granted the SEC's motion for summary judgment and ordered Colello to disgorge $2,620,598.00 and pay $276,954.63 in interest. Judgments were also entered against the other defendants, who are not involved in this appeal. Colello failed to pay the judgment against him on the order to disgorge. In a post-judgment proceeding, the district court found Colello in contempt for noncompliance. The district court ordered Colello to pay the judgment or surrender himself for arrest. It then stayed the arrest warrant pending Colello's submission of supplemental evidence that he is unable to comply with the district court's order.
 
 Standard of Review
 
 4
 This court reviews de novo both the grant of the SEC's summary judgment motion and the denial of Colello's. Oregon Natural Resources Council v. Lowe, 109 F.3d 521, 526 (9th Cir.1997). We likewise review the district court's exercise of subject matter jurisdiction and its denial of Colello's motion to dismiss for failure to state a claim. San Francisco County Democratic Cent. Comm. v. Eu, 826 F.2d 814, 818 n. 3 (9th Cir.1987). This court reviews the disgorgement order for abuse of discretion. SEC v. Clark, 915 F.2d 439, 453 (9th Cir.1990).
 
 Discussion
 
 5
 * Two district courts have allowed the SEC to sue a "nominal defendant" to recover fraud proceeds, SEC v. Egan, 856 F.Supp. 401 (N.D.Ill.1993); SEC v. Antar, 831 F.Supp. 380 (D.N.J.1993), and the Seventh Circuit has endorsed such actions in SEC v. Cherif, 933 F.2d 403 (7th Cir.1991). This circuit has not yet spoken on the subject.
 
 
 6
 A nominal defendant is a person who "holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute." Cherif, 933 F.2d at 414 (internal quotations and citation omitted). The paradigmatic nominal defendant is "a trustee, agent, or depositary ... [who is] joined purely as a means of facilitating collection." Id. (internal quotations and citation omitted). As the nominal defendant has no legitimate claim to the disputed property, he is not a real party in interest. Id. Accordingly, "there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction of the defendant is established."[1] Id.
 
 
 7
 Colello asks this court to reject per se the use of nominal defendants. He relies upon such cases as Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 191, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994) (The text of the securities laws does not provide for aider and abettor liability.) and Pinter v. Dahl, 486 U.S. 622, 650, 108 S.Ct. 2063, 2079-80, 100 L.Ed.2d 658 (1988) (refusing to expand the term "seller" because such expansion is not supported by the text). Each of these cases stands for the proposition that causes of action under the securities laws must have a basis in the text of the statute. Colello correctly notes that the text of the securities laws does not mention the use of nominal defendants.
 
 
 8
 Nevertheless, there is law to support the use of nominal defendants in securities' actions to collect the proceeds of fraud. While no precedent speaks directly to this point, ample authority supports the proposition that the broad equitable powers of the federal courts can be employed to recover ill gotten gains for the benefit of the victims of wrongdoing, whether held by the original wrongdoer or by one who has received the proceeds after the wrong. For example, the Supreme Court has held that a plaintiff who has a cause of action under the securities laws can enforce those rights "by such legal or equitable actions or procedures as would normally be available to him." Deckert v. Independence Shares Corp., 311 U.S. 282, 287-88, 61 S.Ct. 229, 232-33, 85 L.Ed. 189 (1940).[2] This court has declared that "federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir.1980) ("Wencke II "). This broad power extends over third parties to the action. Wencke II, 622 F.2d at 1369 (District court has power to enjoin non-parties from suing a receivership in securities' action.).
 
 
 9
 The Supreme Court's hostility to causes of action without textual support and precedent supporting broad equitable powers can be reconciled by distinguishing between causes of action and forms of relief, a distinction drawn by the Supreme Court. See Davis v. Passman, 442 U.S. 228, 239, 99 S.Ct. 2264, 2273-74, 60 L.Ed.2d 846 (1979) ("[T]he question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive."). See also SEC v. Sands, 902 F.Supp. 1149, 1158 (C.D.Cal.1995) ("The Central Bank decision does not renounce the once predominant view that courts may invoke whatever rights and remedies they deem appropriate to effectuate the purposes of the securities laws.") (internal quotations and alteration omitted). Accordingly, we conclude that the SEC may name a non-party depository as a nominal defendant to effect full relief in the marshalling of assets that are the fruit of the underlying fraud.
 
 II
 
 10
 Colello also argues that even if the SEC is allowed to name a nominal defendant, in this case he is not one. As noted above, the standard nominal defendant is a bank or trustee, which has only a custodial claim to the property. Colello contends that his relationship with the principal defendants in this case is very different. He claims that he provided services to CFS by securing letters of credit. He asserts that he paid over to others most of the money in doing so, and the amount that he retained was his fee for services. Colello contends that the district court improperly placed the burden on him to show that he had a legitimate claim to the funds. Moreover, he contends that he produced evidence below raising genuine issues of material fact as to the validity of his claims.
 
 
 11
 * Colello's claims are not without substance. Indeed, we emphasize that in the typical case, the creditor plaintiff must show that the nominal defendant has received ill gotten funds and that he does not have a legitimate claim to those funds.[3] The SEC attempts to counter Colello's argument by characterizing Colello's claim that he has a legitimate interest in the funds as an affirmative defense. We disagree with the SEC because the lack of a legitimate claim to the funds is the defining element of a nominal defendant.
 
 
 12
 This case, however, is atypical because Colello has consistently invoked his Fifth Amendment privilege not to testify. The district court expressly based its summary judgment for the SEC on Colello's failure to go forward with evidence, as well as his resort to the Fifth Amendment. SEC v. Cross Financial Services, 908 F.Supp. 718, 732 (C.D.Cal.1995) ("Colello's receipt of investor monies for an alleged purpose that was never disclosed to the investors, together with his assertion of his Fifth Amendment privilege in response to questions about his ownership claims, demonstrate the absence of any legitimate call on the funds.").
 
 B
 
 13
 Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof. See Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 1557-58, 47 L.Ed.2d 810 (1976); United States v. Solano-Godines, 120 F.3d 957, 962 (9th Cir.1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify."). Moreover, a district court has discretion in its response to a party's invocation of the Fifth. See Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1089 (5th Cir.1979) (If invocation of privilege prejudiced the other party, the district court "would be free to fashion whatever remedy is required to prevent unfairness."); United States v. $506,641.00 in U.S. Currency, 1996 WL 78364, * 3 (N.D.Ill.1996) ("[A] court has discretion in determining the appropriate means of dealing with a claimant's invocation of the privilege."). In this case, the district court exercised its discretion by shifting the burden to Colello to show a legitimate claim to the funds and granted the SEC summary judgment.
 
 
 14
 Courts have imposed fairly severe penalties in cases procedurally similar to Colello's. See United States v. One Parcel of Real Property, 780 F.Supp. 715, 722 (D.Or.1991) (striking counterclaim and affirmative defense in their entirety because of defendant's use of the privilege); SEC v. Benson, 657 F.Supp. 1122, 1129 (S.D.N.Y.1987) (granting summary judgment against the silent party). See also Robert Heidt, The Conjurer's Circle--The Fifth Amendment Privilege in Civil Cases, 91 Yale L.J. 1062, 1126-32 (1982) (recommending burden-shifting and barring testimony as appropriate responses to invocation of the Fifth Amendment). In Benson, the defendant invoked his Fifth Amendment right and tried to introduce evidence precluding summary judgment against him. Benson, 657 F.Supp. at 1129. The court, however, barred him from introducing any such evidence. It held that "[b]y his initial obstruction of discovery and his subsequent assertion of the privilege, defendant has forfeited the right to offer evidence disputing the plaintiff's evidence or supporting his own denials." Id.
 
 C
 
 15
 The Seventh Circuit has held that a "direct inference of guilt from silence is forbidden."[4] LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 390 (7th Cir.1995). It based its holding on passages from two Supreme Court opinions. See Lefkowitz v. Cunningham 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977). (The Fifth Amendment is violated when "refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions."); Baxter, 425 U.S. at 318, 96 S.Ct. at 1558 (adverse inference allowed when defendant "remained silent at the hearing in the face of evidence that incriminated him; and, as far as th[e] record reveals, his silence was given no more evidentiary value than was warranted by the facts"). Lefkowitz and Baxter require that there be evidence in addition to the adverse inference to support a court's ruling. Thus, whether the district court committed reversible error turns on whether the SEC presented additional evidence against Colello.
 
 
 16
 As noted above, the district court based its ruling on the SEC's proof of Colello's receipt of the funds of the victims combined with an adverse inference drawn from Colello's silence. Cross Financial Services, 908 F.Supp. at 732 ("Colello's receipt of investor monies for an alleged purpose that was never disclosed to the investors, together with his assertion of his Fifth Amendment privilege in response to questions about his ownership claims, demonstrate the absence of any legitimate call on the funds."). The district court also considered the evidence presented by Colello and found nothing in it to support Colello's claims to the funds. Id. at 721 n. 3. Thus, the district court's ruling did not turn on Colello's silence alone and the court did not err.
 
 
 17
 The summary judgment may seem harsh, but Colello refused to give information necessary to determine whether he still possessed any of the funds or whether he had a legitimate claim to them. The principal defendants did not know how Colello had spent the money, nor did they know what his fees were. See Colello's Excerpts of Record at 1167-70 (Principal defendant Carroll Siemens testifying that certain transfers to Colello were "probably" consulting fees); Colello's Excerpts of Record at 1187-88 (Siemen's accountant testifying that he was unsure whether the dollar amount he entered on a 1099 Form for Colello was $447,650 or $3,447,650). It also should be noted that the district court continues to give Colello an opportunity to show where the money went. Despite finding Colello in contempt for noncompliance with its disgorgement order, the district court has stayed the arrest of Colello to permit him to file supplemental materials explaining why he cannot comply.
 
 III
 
 18
 Finally, Colello argues that the district court abused its discretion by ordering him to disgorge the illegal funds. He reasons that disgorgement is a form of injunctive remedy and this circuit requires that the SEC must establish the likelihood of future violations of the securities laws by the defendant to obtain an injunction. See SEC v. Clark, 915 F.2d at 453 (Disgorgement is a form of injunctive relief); SEC v. Murphy, 626 F.2d 633, 655 (9th Cir.1980) (To obtain a permanent injunction, the SEC must show a likelihood of future violations.).
 
 
 19
 This argument has no merit. The need to show a likelihood of future violations is limited to cases involving a permanent injunction. See, e.g., SEC v. Fehn, 97 F.3d 1276, 1295 (9th Cir.1996), cert. denied, --- U.S. ----, 118 S.Ct. 59, 139 L.Ed.2d 22 (1997); SEC v. Bilzerian, 29 F.3d 689, 695 (D.C.Cir.1994); SEC v. The Electronics Warehouse, Inc., 689 F.Supp. 53, 68 (D.Conn.1988). To order disgorgement, the district court need not have found that Colello was likely to violate securities laws in the future. The court need find only that Colello has no right to retain the funds illegally taken from the victims. It was not error to order disgorgement in this case.
 
 
 20
 Affirmed.
 
 
 
 *
 Honorable Donald P. Lay, United States Circuit Judge for the 8th Circuit, sitting by designation
 
 
 [1]
 The SEC correctly notes that "there is no such concept as 'subject matter jurisdiction over the person.' " Brief for SEC at 17 n. 9. When the Seventh Circuit uses this phrase, we assume that it means subject matter jurisdiction over a claim to the property in the nominal defendant's possession
 
 
 [2]
 Colello argues that Deckert "has been eroded to the vanishing point by subsequent [Supreme] Court precedent." Reply Brief for Colello at 5. This argument has no merit. The Supreme Court reaffirmed the relevant portion of Deckert as recently as 1992. See Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 68, 112 S.Ct. 1028, 1033-34, 117 L.Ed.2d 208 (1992) (quoting Deckert for the proposition that if there is a statutory violation, courts can fashion appropriate equitable relief)
 
 
 [3]
 Unfortunately, the cases discussing the use of nominal defendants are not explicit on this question. See Cherif, 933 F.2d at 414 n. 11 (stating that the court below must determine whether the nominal defendant has a legitimate claim, but not explaining who bears the burden); Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co., 940 F.Supp. 1101, 1137 (W.D.Mich.1996) (Plaintiffs cannot name parties as nominal defendants "without a showing that they possess illegally obtained profits without a legitimate claim to them.")
 
 
 [4]
 As a nominal defendant, Colello is theoretically not "guilty" of anything. A finding that he has no legitimate claim to the funds, however, is a ruling against him as a custodian and subjects him to a disgorgement order