[No. 23899-3-II.    Division Two.    December 10, 1999.]

BLAKE SAND & GRAVEL, INC., *Respondent*, v. MARK SAXON, ET AL., *Defendants*, PHILIP E. ZERR, ET AL., *Appellants*.

*Susan Rae Fox* of *Ryan Swanson & Cleveland, P.L.L.C.*, for appellants.

*Alan E. Millet* of *Millet & Mauhar*, for respondent.

ARMSTRONG, A.C.J. — Blake Sand & Gravel sued Philip E. Zerr and Suelma Zerr to collect for materials delivered to Emerald Highlands, a construction project owned by the Zerrs. A personal judgment was entered against the Zerrs. They appeal, alleging that their contractor, John Dickinson, was not their common law agent and therefore could not bind them personally to a contract with Blake. We affirm.

## FACTS

Blake sued to collect a debt for materials delivered to the Zerrs' construction site. Blake sought a monetary judgment and foreclosure of a materialman's lien against the property under chapter 60.04 RCW. But because the lender's lien on the property had priority, Blake abandoned its foreclosure claim.

The trial court entered the following factual findings. Philip R. Zerr and Suelma Zerr were co-owners of a real property development known as Emerald Highlands. The Zerrs hired John Dickinson to install roads and electric, sewer, and water lines. Zerr authorized Dickinson to order the necessary materials and supplies to perform the construction work. Dickinson ordered the necessary materi-

als from Blake Sand & Gravel, Inc., and Blake delivered the materials to the property. Phillip Zerr was aware of the deliveries because he spoke with David Blake by telephone at least once after a delivery and paid Blake $20,479.19 for materials supplied to the property at the request of John Dickinson. Zerr personally authorized the delivery of the materials by Blake and assumed personal responsibility for payment of the same as owner of the property. The reasonable value of the materials delivered and not paid for is $69,956.28.

The trial court concluded that Zerr entered into a contract with Blake to provide materials to improve real property owned by the defendants and awarded judgment against the Zerrs in the sum of $69,956.28, plus interest.[1] The Zerrs appeal.

## ANALYSIS
### A. Is the testimony of an alleged agent admissible to establish the agent's authority?

To obtain a personal judgment against the Zerrs, as opposed to obtaining a lien on the property under chapter 60.04 RCW, Blake must prove either a contractual relationship between the parties or that Zerr promised to pay for the materials. *See Douglas N.W., Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 689-90, 828 P.2d 565 (1992).[2] Here, although the trial court did not state on what theory a contract was formed, the findings of fact and

---

[1] Judgment was also entered against codefendants, Mark Saxon and Mill Creek Enterprises, Inc.

[2] The two sections of the lien statute cited in *Douglas*, RCW 60.04.130 and .180, have been repealed (repealed June 1, 1992, LAWS OF 1991, ch. 281, § 31). But the language of former RCW 60.04.180, entitled Personal Action Preserved, was recodified at RCW 60.04.191. *See* LAWS OF 1991, ch. 281, § 19. This section provides in part:

Nothing in this chapter shall be construed to impair or affect the right of any person to whom any debt may be due for the furnishing of labor, professional services, material, or equipment to maintain a personal action to recover the debt against any person liable therefor.

RCW 60.04.191.

testimony point to an agency relationship between Phillip Zerr and Dickinson.

Blake testified that he did not have a written or oral contract with Zerr or Emerald Highlands. Instead, he said that he had an oral request from Dickinson to furnish materials. But Dickinson testified and the trial court found that Zerr personally authorized Dickinson to order materials necessary to complete the construction work. The Zerrs challenge this finding. The Zerrs do not dispute that Dickinson made the statement but contend that an agent is not competent to testify as to his authority.

■ The Supreme Court has repeatedly held that an agent's authority can be established based on the direct testimony of the alleged agent. *See Hartford v. Faw*, 166 Wash. 335, 344, 7 P.2d 4 (1932); *Beeler v. Pacific Fruit & Produce Co.*, 133 Wash. 116, 118, 233 P. 4 (1925); *Pacific Power & Light Co. v. White*, 104 Wash. 528, 529, 177 P. 313 (1918); *Singer v. Guy Inv. Co.*, 60 Wash. 674, 678, 111 P. 886 (1910); *Bender v. Ragan*, 53 Wash. 521, 522, 102 P. 427 (1909). But the Zerrs rely on *Ford v. United Bhd. of Carpenters & Joiners*, 50 Wn.2d 832, 315 P.2d 299 (1957), and *Lumber Mart Co. v. Buchanan*, 69 Wn.2d 658, 419 P.2d 1002 (1966), for the proposition that an agent cannot testify as to his authority. In *Ford*, the court said, "It is true that agency may not be proved by the declarations of the alleged agent . . . ." *Ford*, 50 Wn.2d at 833-36.

The Zerrs misread this statement. In *Ford*, the word "declarations" refers to the out-of-court statements of the alleged agent offered by a third party. The alleged agent in *Ford* died in a car crash that was the subject of the litigation. The plaintiff tried to introduce the testimony of a woman who had spoken to the agent before his death to establish that he was acting within the scope of his agency at the time of the accident. *Id.* at 836. In this context, the court simply stated the well-established rule that the alleged agent's out-of-court declarations may not be used to establish the existence of an agency relationship. *Id.*; *see e.g., Security State Bank v. Klasey*, 67 Wn.2d 430, 432, 407

P.2d 983 (1965); *Stouffer-Bowman, Inc. v. Webber,* 18 Wn.2d 416, 425, 139 P.2d 717 (1943); *Ennis v. Smith,* 171 Wash. 126, 129-30, 18 P.2d 1 (1933); *Anning v. Rothschild & Co.,* 130 Wash. 232, 233-34, 226 P. 1013 (1924); *Comegys v. American Lumber Co.,* 8 Wash. 661, 663, 36 P. 1087 (1894); *see Singmaster v. Hall,* 98 Wash. 134, 137, 167 P. 136 (1917); *Eyers v. Burbank Co.,* 97 Wash. 220, 238, 166 P. 656 (1917); *see also State v Austin,* 65 Wn.2d 916, 920-21, 400 P.2d 603 (1965) (criminal agency).

In *Beeler,* the court explained the difference between out-of-court statements and direct testimony:

> While it is true that agency cannot be proved by the testimony of third parties as to the declarations of the agent made to them, the situation here is not that. Here the agent is testifying directly as to his authority, and we have heretofore held that such testimony is as admissible coming from the agent on the stand, as the contrary evidence would be from the principal as a witness.

*Beeler,* 133 Wash. at 118 (citing *Bender,* 53 Wash. at 522; *Pacific Power & Light Co.,* 104 Wash. at 529).

This is also consistent with general principles of agency. The RESTATEMENT (SECOND) OF AGENCY § 285 (1958) states in part: "Evidence of a statement by an agent concerning the existence or extent of his authority is not admissible against the principal to prove its existence or extent, unless it appears by other evidence that the making of such statement was within the authority of the agent . . . ." But the comment to this section further clarifies: "The rule . . . does not deal with testimony by an agent. A person can properly testify as to the facts which it is alleged constitute his authority, and his testimony can be introduced either by or against the alleged principal." RESTATEMENT, *supra,* cmt. a.

The only case cited by the Zerrs that appears to support their claim is *Lumber Mart.* In *Lumber Mart,* the alleged agent ordered materials and supervised construction of an ice arena. The agent testified that he was paid $100 per

week to supervise the construction. The principal said that the weekly payments were a loan and that the agent was merely his lessee. *Lumber Mart*, 69 Wn.2d at 659-60. Citing *Ford*, the Supreme Court agreed with the alleged principal that "agency cannot be proven by declarations of the alleged agent." *Id.* at 661. But the court concluded that agency was established based on other evidence, because the principal knew that the agent was ordering materials for the site and did not complain about these actions. *Id.*

Because the agent in *Lumber Mart* testified as to his authority, i.e., that he was hired by the principal to supervise construction, *Lumber Mart* appears to be a departure from Washington law. But *Lumber Mart* has not been cited for the proposition that an agent cannot testify as to his actual authority. And because it is unlikely that the Supreme Court was overruling well-established law with a single reference to the statement in *Ford*, we view the statement in *Lumber Mart* as an anomaly.[3]

### B. Is the evidence sufficient to establish agency?

█ When an agent has actual authority to act on behalf of the principal, the agent's exercise of the authority binds the principal. *Smith v. Hansen, Hansen & Johnson, Inc.*, 63 Wn. App. 355, 363-64, 818 P.2d 1127 (1991) (citing *Petersen v. Pacific Am. Fisheries*, 108 Wash. 63, 68, 183 P. 79, 8 A.L.R. 198 (1919)). Actual authority is established based on the objective manifestations of the principal. *Smith*, 63 Wn. App. at 363 (citing *Lumber Mart*, 69 Wn.2d at 661). "The manifestations to the agent can be made by the principal directly, or by any means intended to cause the agent to believe that he is authorized or which the principal should realize will cause such belief." RESTATEMENT, *supra*, § 26, cmt. b.

---

[3]The reference in *Ford* to the inadmissibility of an agent's declaration, which was referenced in *Lumber Mart*, is not supported by citation to authority. *See Ford*, 50 Wn.2d at 836. Thus, the *Lumber Mart* court may have simply relied on *Ford* and overlooked prior case law.

Here, the evidence established Dickinson's actual authority to procure materials. The undisputed testimony of Dickinson is that Zerr personally authorized him to order the necessary materials. Dickinson further testified, "[Zerr] said I would define the material that I could get that would do the job and see that it got there basically." Dickinson understood that he was authorized to "order materials and supplies as we needed them and they took care of paying for them." And Zerr was aware of Blake's delivery of the materials and at least once paid Blake $20,479.19 for materials supplied at Dickinson's request. These facts are more than sufficient to establish Dickinson's agency. *See Lumber Mart*, 69 Wn.2d at 661. The trial court did not err in entering a personal judgment against the Zerrs.

Affirmed.

SEINFELD and HUNT, JJ., concur.