

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| VERBENA HEALTH, | ) | No. 68179-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE L. MALKIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 1, 2013 |
| | ) | |

VERELLEN, J. — Michelle Malkin appeals the trial court's grant of summary judgment to Verbena Health based on her misappropriation of funds. Malkin contends that Verbena, a dissolved nonprofit corporation, did not have standing to pursue an action against her and did not properly serve the summons and complaint, rendering the judgment void for lack of personal jurisdiction. But the record reflects Verbena timely filed suit and service of process was adequate. Malkin also claims the trial court erred in drawing adverse inferences against her because she invoked the Fifth Amendment privilege. Because Verbena presented undisputed factual evidence of Malkin's financial malfeasance, summary judgment was proper, without any consideration of the negative inference. We affirm.

## FACTS

Verbena was a nonprofit organization that provided community health services to the lesbian, gay, bisexual and transgender community. Michelle Malkin was the

executive director, responsible for the organization's budget and overall financial health.

In early 2008, interim treasurer David Haack attempted to recruit a certified public accountant to join the board of directors, but Malkin refused to show Verbena's financial records to the board candidate. Staff began to receive calls from vendors, creditors, donors and grant recipients informing Verbena of bounced checks and delinquent payments. On May 13, 2008, Verbena closed its doors because it could not meet its financial commitments. The board learned that Verbena's bank account had been depleted, that Malkin had made payments to unauthorized accounts, and that suspicious charges from casinos and cruise lines filled Verbena's bank statements. The Secretary of State administratively dissolved Verbena on August 3, 2009.

Based on the board's review of Verbena's financial documents, a complaint was filed on June 17, 2010 alleging Malkin misused Verbena funds by (1) withdrawing funds from automated teller machines (ATMs) for gambling at casinos; (2) charging personal expenses to Verbena accounts; (3) withdrawing cash for personal expenses from Verbena's checking account; and (4) issuing Verbena checks to herself, to Tammy Kaiser (Malkin's domestic partner), and to a variety of businesses owned by Malkin and Kaiser, including TKK Consulting, MLM Consulting, and Ripcord Enterprises. Verbena alleged causes of action for conversion, breach of fiduciary duty, breach of contract, breach of duty of good faith and fair dealing, fraud, unjust enrichment, embezzlement, and tortious interference with contractual relations/business expectancy.

*Service of the Complaint*

Verbena hired a private detective to locate Malkin and serve the summons and complaint. The detective, Brett Starr, obtained information linking Malkin to a residence

at 224 Willow Park Way in Buffalo Grove, Illinois. Starr determined Malkin had two possible cotenants, Alice Lundquist and Janet Lundquist. Starr's affidavit of service states that he visited the residence in Buffalo Grove to attempt service on June 17, 2010, and June 20, 2010. On June 17, Starr spoke with Alice Lundquist, who informed Starr that Malkin was out of the area, but in the state.

On June 20, Starr returned to the residence and again spoke with Alice Lundquist. Lundquist told Starr she had been unable to reach Malkin. After verifying that Malkin lived at the residence, Starr "served a copy of the summons and complaint . . . upon the defendant's co-tenant Alice Lundquist."[1]

Malkin answered the complaint and asserted affirmative defenses, among them that Verbena lacked standing to bring the action, and that "Plaintiff has failed to secure sufficient process upon defendant."[2]

## Discovery

Verbena served requests for production, interrogatories, and requests for admission on Malkin, including discovery of her current residence. To each request for production and interrogatory, Malkin answered, "Defendant objects to the request [as] implicating Defendant's Fifth Amendment rights against self-incrimination. Objection is noted also on grounds of lack of standing of Plaintiff to bring this lawsuit and of Plaintiff's failure to acquire personal jurisdiction of the Defendant."[3] Malkin provided the

---

[1] Clerk's Papers at 113-14. Starr also left a voicemail on the cell phone he had associated with Malkin, detailing the service of process at the Buffalo Grove residence and notifying Malkin she had 60 days to respond to the complaint.

[2] Clerk's Papers at 20.

[3] Clerk's Papers at 95-103.

identical answer to Verbena's 11 requests for admission. Malkin then served a discovery request on Verbena, seeking information about its board and organizational status, and requesting documentation of the alleged wrongdoing.

Verbena deposed Malkin on September 2, 2011. After stating her name, Malkin refused to answer each and every question, including questions directed to determine Malkin's affirmative defense of insufficient service of process. Malkin's response to each question during the deposition was, "I respectfully decline to answer based on my Fifth Amendment right against self-incrimination."[4]

*Verbena's Motion for Summary Judgment*

Verbena moved for summary judgment on October 20, 2011. Verbena based its motion on the documents it had gathered from its files, including Washington Mutual bank statements highlighting the allegedly unauthorized withdrawals; allegedly unauthorized checks issued by Malkin to herself and her partner, MLM Consulting, TKK Consulting and Ripcord Enterprises; and correspondence from Malkin to her partner regarding Malkin's personal debt. Verbena argued it was entitled to judgment based upon substantive evidence of financial wrongdoing, coupled with the negative inference of Malkin's reliance on the Fifth Amendment.

Malkin opposed summary judgment, asserting insufficient service of process and arguing Verbena could not prosecute the action as a dissolved nonprofit organization. In support of her service of process defense, Malkin submitted the declaration of Alice Lundquist. Lundquist testified she lived at the Buffalo Grove residence with Malkin, as

---

[4] Clerk's Papers at 56-73.

Starr had identified. However, Lundquist testified Malkin began attending school in another part of the state in early June 2010 and had arranged to have mail forwarded to a different address. On June 16,[5] when Starr arrived at the Buffalo Grove residence, Lundquist told Starr that Malkin would be away for at least a few months. On June 20, when Starr returned, Lundquist told Starr that Malkin would not return to the Buffalo Grove residence until at least sometime in August. Lundquist closed the door, and Starr rang the doorbell and banged on the door. Lundquist was frightened to open the door again. After Starr left, Lundquist opened the door to find papers between the screen door and front door.

The trial court granted summary judgment and entered judgment for Verbena in the amount of $80,000 plus prejudgment interest. Malkin appeals, contending the court erred in granting summary judgment.

## DISCUSSION

We review de novo a trial court's decision on summary judgment, performing the same inquiry as the trial court.[6] We may affirm an order granting summary judgment on any basis supported by the record.[7]

---

[5] Starr identified the first attempt at service as June 17, rather than June 16.

[6] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view all facts and reasonable inferences therefrom most favorably toward the nonmoving party. Id. If the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, a court may grant summary judgment. Id.; CR 56(c). If the nonmoving party fails to controvert material facts supporting the summary judgment motion, those facts are considered to be established. Cent. Wash. Bank v. Mendelson-Zeller, Inc., 113 Wn.2d 346, 354, 779 P.2d 697 (1989).

[7] LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

*Verbena's Standing*

As a threshold matter, Malkin contends Verbena does not have standing to prosecute the lawsuit because (1) David Haack did not have authority under RCW 24.03.465 to act on Verbena's behalf; and (2) Verbena's lawsuit does not fall within the limitations of RCW 23B.14.050, which permits a dissolved corporation to carry on business only to wind up and liquidate its business and affairs.[8] Neither of Malkin's arguments is persuasive.

The Washington Nonprofit Corporation Act, chapter 24.03 RCW (the Act), provides a two-year window after dissolution in which a nonprofit organization may pursue claims or defend liabilities incurred prior to dissolution:

> The dissolution of a corporation . . . shall not take away or impair any remedy available to . . . such corporation, its directors, officers, or members, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution.[9]

Verbena was administratively dissolved on August 3, 2009. Verbena filed suit on June 17, 2010, well within the two-year window required by RCW 24.03.300.

The Act also provides that the directors and officers of a nonprofit "shall have power to take such corporate or other action as shall be appropriate to protect such

---

[8] Malkin also argues that Verbena violated RCW 24.03.300 because the complaint recites "Verbena Health" rather than its official corporate name of "Verbena." (RCW 24.03.300 allows a dissolved nonprofit corporation to pursue claims "in its corporate name.") We decline to consider this issue, as it was raised for the first time in a reply brief. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

[9] RCW 24.03.300.

6

remedy, right or claim."[10] The organization acts either through a meeting of the board members, or by recorded consent of the board:

> Any action required by this chapter to be taken at a meeting of the members or directors of a corporation, or any action which may be taken at a meeting of the members or directors, may be taken without a meeting if a consent in the form of a record, setting forth the action so taken, shall be executed by all of the members entitled to vote with respect to the subject matter thereof, or all of the directors, as the case may be.[11]

Haack stated in his declaration that he served as the chair of Verbena's board of directors. An agent may testify as to the scope of his actual authority to act for the principal.[12] Malkin does not present any evidence to contradict Haack's testimony. The record contains minutes from a May 10, 2008 meeting of Verbena's board of directors, which Haack attended.[13] The minutes reflect a proposed motion to retain an attorney to represent Verbena in a lawsuit against Malkin, a motion to accept the resolution, a seconding of the motion, and a unanimous vote in favor.[14]

Nothing in the record suggests that Verbena did not follow proper procedure under the Act before initiating its lawsuit, or that Haack did not have authority to act on behalf of Verbena as chairman of the board.

Malkin also argues the substance of Verbena's lawsuit is improper, as it is not aimed at winding up or liquidating Verbena's business or affairs. Malkin relies on

---

[10] RCW 24.03.300.

[11] RCW 24.03.465.

[12] Blake Sand & Gravel, Inc. v. Saxon, 98 Wn. App. 218, 222, 989 P.2d 1178 (1999) (quoting RESTATEMENT (SECOND) OF AGENCY § 285 cmt. a (1958)).

[13] Malkin did not object to authenticity of the board meeting minutes.

[14] Verbena redacted the subsequent meeting minutes addressing the content and strategy of the lawsuit.

RCW 23B.14.050, a provision of the Washington Business Corporation Act. But the applicable section of the Act grants Verbena authority to pursue remedies for any claim that existed before dissolution. The board learned of Malkin's alleged wrongdoing in May 2008, well before its August 3, 2009 dissolution. Verbena sued Malkin in June 2010, well within the two-year period allowed. The court did not err in determining Verbena could sue Malkin.

## Service of Process

Malkin argues that even if Verbena has standing to sue, Verbena failed to properly serve her with the summons and complaint. Verbena offers three alternative theories supporting service of process: (1) valid substitute service; (2) waiver of the service-of-process defense through inconsistent conduct; and (3) waiver based on Malkin's invocation of the Fifth Amendment privilege. Because the record contains undisputed facts establishing proper substitute service, we do not reach either of the waiver theories.[15][16]

---

[15] Although we do not reach waiver based on inconsistent conduct, waiver under Lybbert is questionable. The doctrine is "designed to prevent a defendant from ambushing a plaintiff during litigation either through delay in asserting a defense or misdirecting the plaintiff away from a defense for tactical advantage." King v. Snohomish County, 146 Wn.2d 420, 424, 47 P.3d 563 (2002) (citing Lybbert, 141 Wn.2d at 40). Even if a defendant has properly asserted the defense in a responsive pleading or motion under CR 12(b)(5), a defendant may waive the defense if "(1) assertion of the defense is inconsistent with defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense." Id. (citing Lybbert, 141 Wn.2d at 39). While Malkin refused to respond substantively to Verbena's discovery on the service-of-process issue, she consistently alerted Verbena in her discovery responses that she intended to rely on service of process as an affirmative defense. While Malkin did not move to dismiss, she relied upon the defense in her opposition to Verbena's motion for summary judgment. She did not fail to assert it in a summary judgment proceeding like the defendant in King. Malkin propounded discovery on the merits, seeking information about Verbena's board and organizational status and requesting documentation of the alleged wrongdoing. But

"Proper service of the summons and complaint is a prerequisite to the court obtaining jurisdiction over a party, and a judgment entered without such jurisdiction is void."[17] Whether service of process was proper is a question of law we review de novo.[18] Where a defendant asserts improper service before judgment is entered, rather than to attack a judgment already entered, a plaintiff's affidavit of service is not presumptively correct.[19] When a defendant raises the defense of service of process in the summary judgment context, as Malkin has here, the usual summary judgment rules apply. We must therefore determine whether genuine issues of material fact exist as to

---

engaging in discovery is not, by itself, "'tantamount to conduct inconsistent with a later assertion of the defense.'" Lybbert, 141 Wn.2d at 41 (quoting Romjue v. Fairchild, 60 Wn. App. 278, 281, 803 P.2d 57 (1991)). While Malkin could have been forthcoming in articulating the details of her defense in her discovery responses, her failure to do so did not "misdirect[ ] the plaintiff away from a defense for tactical advantage." King, 146 Wn.2d at 424.

[16] Washington courts have not addressed the invocation of the Fifth Amendment as the basis for waiver of inadequate service of process. Federal courts recognize that defendants may not advance facts in support of their position and then use the Fifth Amendment to shield themselves from any discovery as to those same facts. See, e.g., In re Edmond, 934 F.2d 1304, 1308-09 (4th Cir. 1991) ("the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion"); United States v. Parcels of Land, 903 F.2d 36, 42-44 (1st Cir. 1990) (striking defendant's affidavit because defendant could not shield his account of the "facts" from scrutiny by invoking the Fifth Amendment at his deposition); S.E.C. v. Benson, 657 F. Supp. 1122, 1129 (S.D.N.Y 1987) ("it would be abuse of the Fifth Amendment privilege to allow a civil litigant to use it to offer proofs while denying the adversary discovery of his contentions").

[17] Woodruff v. Spence, 76 Wn. App. 207, 209, 883 P.2d 936 (1994).

[18] Pascua v. Heil, 126 Wn. App. 520, 527, 108 P.3d 1253 (2005).

[19] Farmer v. Davis, 161 Wn. App. 420, 428-29, 250 P.3d 138, review denied, 172 Wn.2d 1019 (2011) (an affidavit of service is presumptively correct where defendant challenges service of process *after* entry of judgment).

the sufficiency of substitute service, when viewing the admissible portions of Starr's and Lundquist's declarations in the light most favorable to Malkin, the nonmoving party.[20]

A plaintiff may effectuate substitute service "by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein."[21] The term "usual place of abode" means the "'center of one's domestic activity'" such that service left with some person of suitable age "'is reasonably calculated to come to one's attention within the statutory period for [the] defendant to appear.'"[22]

Verbena submitted Starr's affidavit of service, stating that Starr "served a copy of the summons and complaint . . . upon the defendant's co-tenant Alice Lundquist" at the Buffalo Grove residence.[23] Starr determined the residence was Malkin's place of abode through commercial database reports and Verizon cell phone records listing the residence as Malkin's home.

Malkin relied upon Lundquist's declaration, which provides more detail about Starr's activity. Lundquist testified that on June 17, 2010, she told Starr that Malkin lived at the Buffalo Grove residence until June 2, 2010, that Malkin left to attend school in another part of the state, and that Malkin arranged to have her mail forwarded. Lundquist's declaration states, "Malkin was not there [in Buffalo Grove] and . . . she

---

[20] Neither the trial court nor this court will weigh the evidence or assess witness credibility on a motion for summary judgment. Barker v. Advanced Silicon Materials, LLC, 131 Wn. App. 616, 624, 128 P.3d 633 (2006).

[21] RCW 4.28.080(15).

[22] Sheldon v. Fettig, 129 Wn.2d 601, 610, 919 P.2d 1209 (1996) (quoting Sheldon v. Fettig, 77 Wn. App. 775, 781, 893 P.2d 1136 (1995)).

[23] Clerk's Papers at 113-14.

would be away from the area for at least a couple of months."[24] When Lundquist returned on June 20, Lundquist "repeated that Ms. Malkin would not be at this address until at least some time in August."[25] Lundquist closed the door, and Starr rang the doorbell and knocked again. Lundquist refused to open the door again, and Starr left the papers between the screen door and front door.

Viewing all admissible evidence of service in a light most favorable to Malkin— i.e., assuming (1) that Starr's statement that he "served" Lundquist meant he left the summons by the door rather than hand-to-hand delivery; and (2) that Malkin was away at school temporarily but was coming back to live at the Buffalo Grove residence sometime during or after August 2010—Verbena effectuated substitute service.[26]

Hand-to-hand service is not necessary if there is a clear attempt by the process server to "yield possession and control of the documents" while the process server is "positioned in a manner to accomplish this act."[27] In United Pacific Insurance Co. v. Discount Co., the defendant answered the door, and the process server established the defendant's identity.[28] The defendant asked, "What do you want?" and the process

---

[24] Clerk's Papers at 384.

[25] Clerk's Papers at 385.

[26] If factual disputes exist concerning service of process, the court must hold an evidentiary hearing. Woodruff, 76 Wn. App. at 210 (a trial court abuses its discretion by failing to hold an evidentiary hearing when affidavits present an issue of fact requiring a witness credibility determination). Although the declarations of Starr and Lundquist provide different accounts of Starr's service, we are not required to remand for an evidentiary hearing because the undisputed facts support substitute service.

[27] United Pac. Ins. Co. v. Discount Co., 15 Wn. App. 559, 561-62, 550 P.2d 699 (1976).

[28] 15 Wn. App. 559, 560-61, 550 P.2d 699 (1976).

11

server told her he had legal papers for her.[29] The defendant slammed the door as the process server held out the papers, and the papers fell to the ground.[30] The court held that service was effective, reasoning:

> The facts of the case at bench demonstrate a clear attempt by the process server to yield possession and control of the documents to [defendant] while he was positioned in a manner to accomplish that act. Normal 'delivery' thereof would have been effected upon [defendant] except for her obvious attempt to evade service by slamming the door after the papers had been held out to her. The summons need not actually be placed in the defendant's hand. We find, as did the trial court, that facts in the record support a conclusion that 'delivery' occurred and service was effected.[31]

Here, Starr was positioned at the open door, but Lundquist shut the door and refused to reopen it. Consistent with United Pacific, although Starr may not have placed the papers in Lundquist's hand, delivery occurred.

The Buffalo Grove residence also functioned as Malkin's usual place of abode. The policy behind substitute service is to ensure that service left with some person of suitable age "'is reasonably calculated to come to one's attention within the statutory period for [the] defendant to appear.'"[32] Once an abode is established, it "is presumed to continue until it is shown to have been changed by acquiring another permanent

---

[29] Id. at 561.

[30] Id.

[31] Id. at 561-62; cf. Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 177-78, 744 P.2d 1032 (1987) (insufficient service of process where process server left papers at defendant's place of abode when no person of suitable age or discretion was present at all); Weiss v Glemp, 127 Wn.2d 726, 731-34, 903 P.2d 455 (1995) (leaving papers on windowsill when no one would come to the door is inadequate substitute service.).

[32] Sheldon, 129 Wn.2d at 610 (quoting Sheldon, 77 Wn. App. at 781).

abode."[33] Lundquist testified Malkin lived at the residence but was away at school for a few months, until at least August 2010.

In Sheldon, the court analyzed whether the defendant had been properly served at her family home in Seattle while she was away in Chicago at a flight attendant training program.[34] The court noted the following facts were "indicia of one's center of domestic activity": the defendant registered her car at the Seattle address, she listed the Seattle address on her car insurance, and she returned home frequently.[35]

Like the defendant in Sheldon, the Buffalo Grove residence was Malkin's center of domestic activity. Commercial database reports and Verizon cell phone records listed it as her residence. And Lundquist testified Malkin had arranged for mail received at the Buffalo Grove residence to be forwarded to her at school, so that, consistent with the voicemail Starr left on Malkin's cell phone, Lundquist had a ready means to insure Malkin had prompt notice, allowing her to appear within the 60-day statutory period.[36] Under all of these circumstances, there are sufficient indicia that the Buffalo Grove residence remained Malkin's center of domestic activity.

*Summary Judgment on the Merits*

Verbena moved for summary judgment on the claims of breach of contract, breach of fiduciary duty, breach of duty of good faith and fair dealing, conversion, and fraud. In support of its claims, Verbena submitted bank statements showing $29,637.89

---

[33] Nw. & Pac. Hypotheek Bank v. Ridpath, 29 Wash. 687, 710-11, 70 P. 139 (1902).

[34] Sheldon, 129 Wn.2d at 604, 608-10.

[35] Id. at 610.

[36] RCW 4.28.180.

in unauthorized expenditures, with at least $13,000 of that amount stemming from charges from a trip to Las Vegas in November 2007; unauthorized withdrawals from ATMs near Seattle-area casinos amounting to $11,638.50[37]; checks written by Malkin from Verbena accounts to herself and Kaiser in the amount of $18,803.71; and checks written by Malkin from Verbena accounts to TKK Consulting, MLM Consulting, and Ripcord Enterprises in the amount of $16,780.

Malkin provided no substantive evidence to defeat Verbena's claims. While Malkin raised evidentiary objections to Verbena's evidence of her misconduct, she has neither assigned error to nor provided argument about the court's evidentiary rulings or the judgment amount. Instead, she argues the court was not entitled to draw negative inferences from her exercise of the Fifth Amendment privilege.

We find it unnecessary to reach the application of the negative inference because Verbena met its evidentiary burden without any negative inference.[38] We also

---

[37] Verbena's spreadsheet states the total unauthorized ATM withdrawals as $11,738.50, but the underlying documentation supports a total of $11,638.50. Compare Clerk's Papers 85 with 194 (the 5/5 charge from Goldies was $403, not $503).

[38] Our Supreme Court recognized the existence of the negative inference based on a defendant's exercise of the Fifth Amendment. Ikeda v. Curtis, 43 Wn.2d 449, 458-59, 261 P.2d 684 (1953) (holding that once a witness in a civil suit has invoked his or her Fifth Amendment privilege against self-incrimination, the trier of fact is entitled to draw an adverse inference from the refusal to testify). No Washington cases address the use of such an inference in a summary judgment context, but federal courts have. See, e.g., S.E.C. v. Colello, 139 F.3d 674, 677-79 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof."); United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, NY, 55 F.3d 78 (2d Cir. 1995) ("the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation."); WRIGHT, CHARLES ALAN, ET AL, 8 FED. PRAC. & PROC. CIV. § 2018, at 288 (3d ed.) ("In some cases if a party claims the privilege and does not give his or her own evidence there will be

note that Malkin's choice to rely on the Fifth Amendment instead of disputing the claims on the merits does not invade her Fifth Amendment rights.[39] Malkin had the choice between offering evidence to attempt to create a genuine issue of material fact for trial, or losing on summary judgment. She chose the latter.

Verbena had standing to sue Malkin. Undisputed facts support substitute service of process. Adequate evidence established Malkin's misappropriation of funds, entitling Verbena to summary judgment.

Affirmed.

WE CONCUR:

---

nothing to support his or her view of the case and an adverse finding or even a directed verdict or grant of summary judgment will be proper.").

[39] "'That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.'" United States v. Rylander, 460 U.S. 752, 759, 103 S. Ct. 1548, 75 L. Ed. 2d 521 (1983) (emphasis omotted) (quoting Williams v. Florida, 399 U.S. 78, 83-84, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970)); see also Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989) (a party wishing to defeat summary judgment may not rely on mere allegations and must set forth specific facts establishing there is a genuine issue for trial).